PIERCE, Judge.
In this case, appellant Carl Warren appeals a judgment of conviction entered by the Hillsborough County Criminal Court of Record on February 21, 1968, after a jury trial and guilty verdict on an information for armed robbery.
The robbery took place shortly before 8 o’clock in the morning at Kwik-Chek store #663, at 4015 E. Hillsborough in Tampa. An armored truck had pulled up in front of the store with a sack of money, which had been delivered inside the store. Immediately thereafter, defendant Warren with an accomplice, Willie B. Waldron, each wearing a mask or dark shade and with a gun in hand, went into the store through a back door, hurried everyone inside to the front of the store, grabbed the bag of money, and left. They proceeded first to the home of defendant Warren’s father where they split the money, amounting in all to about $14,000. After burying some unwanted articles in the back yard they left and later met at the home of Juanita Warren, who was Waldron’s girl friend, and in whose home they had stayed the night before, arising early to do the Kwik-Chek job.
Later, armed with a search warrant, police officers recovered the articles buried in the back yard of the father’s home. Among the articles were some checks and envelopes and a white cloth bag with “The First1 National Bank of Tampa” written oh it. The bag was enclosed by an unopened metal seal but had been slit in the bottom and torn open. Several of the envelopes had a return address thereon of the Kwik-Chek Store, No. 663, 4015 E. Hillsborough.
Nine witnesses testified against defendant Warren, four employees of the Kwik- *424 Chek Store, including the assistant manager; two police officers; a male friend of Warren’s; a self-confessed accomplice; and the accomplice’s girl friend. They made a complete case against Warren, to such extent that no testimony at all was put on in behalf of Warren. Nor does Warren’s counsel contend before this Court on appeal that the evidence was in any way insufficient to sustain the conviction. The sole contention made here for reversal is that the examination of the State witness Juanita Warren, girl friend of Wal-dron, overstepped the bounds and constituted reversible error. We will briefly examine her testimony.
Defendant Warren and Willie Waldron, his accomplice, spent the might before the robbery at Juanita’s house. Waldron was her boy friend. The next morning the two men got up early, left the house together, and came back around noon. Waldron came in first with a brown paper bag and told Juanita to look into it. She did and “there was a lot of money in the paper bag. Now, how much money, I do not know because I didn’t count it. But the money was not just balled-up money. It was stacks. It was stacked up in there.” The paper bag had the words “Kwik-Chek” on it. From that point we quote verbatim inter alia from the record:
(By state witness Juanita Warren upon interrogation by Asst. State Atty. Cohen) :
A Willie B., he came there earlier than Carl did. So, when Carl came into the house, I was in the bathroom. Carl told me, he says to me, he says, “Nita,” he said, “it is a good thing that you got this house.” He kissed me on the jaw. He said, “I am just like Robin Hood. I rob from the rich and I give to the poor.” And that’s what he said to me.
Q All right. What else did he say to you?
A I can’t think of anything else that he did say. * * *
Q Did Carl Warren ever say anything to you with reference to a getaway ?
A I don’t understand what you mean about a getaway.
Q About a getaway. Did he say anything ?
Mr. Rawlins (defense attorney): I object to counsel leading the witness. It is obviously a leading question.
The Court: I will sustain the objection. Rephrase the question.
Q Think back and see if you can think of anything else that Carl Warren told you, in addition to him telling you that “I am just like Robin Hood. I rob from the rich and give to the poor.” Take your time and sit there and think about the things that he told you.
A I can’t think of anything else that Carl Warren told me.
Q All right. Did you see anything else there besides that brown bag?
A Did I see anything else? What do you mean “anything else” ?
Q Any other type of container ?
A Money.
Q What was it in ?
A In the brown paper bag.
Q All right. About how large a bag was that?
A It was a large Kwik-Chek bag. And it was rolled down.
Q Did Carl ever tell you anything about “We hit it rich”?
Mr. Rawlins: I object to counsel leading the witness, Judge. * * *
The Court: Objection is sustained.
Q Did Carl ever tell you anything else?
Mr. Rawlins: I object, if your Honor please, being repetitious. * * *
*425 The Court: I will sustain the objection. The witness has answered your question previously. * * *
Q Did you want to testify today?
[[Image here]]
Mr. Rawlins: I object, if your Honor please, whether she wanted to or not. It is immaterial.
Mr. Cohen: I think it goes to her credibility, your Honor. I have been asking her questions which she hasn’t answered. I haven’t hollered impeachment. I tried to lead her to refresh her recollection, and I want to point out to the jury that she didn’t want to testify.
Mr. Rawlins: At this point I move for a mistrial.
The Court: I will deny you motion for mistrial. I will sustain the objection, however. You don’t intend at this time to impeach your own witness, do you, Counselor ?
Mr. Cohen: No, sir. You may inquire.
There was obviously no error in the rulings on the objections to the questions because they were all in favor of the defendant. And there was likewise no error in denying the motion for mistrial, the only ruling against the defendant. It is interesting to note that the objections to the various questions asked were upon different grounds. The first two objections were because the questions were “leading”. The next objection was because the question was “repetitious”. The next objection was because the question was “immaterial”. Then came the motion for mistrial, with no ground urged in support.
In Kelly v. State, Fla.App.1967, 202 So.2d 901, the propriety of a denial of motion for mistrial was raised. The situation there, as here, pertained to improper statements made in the presence of the jury during the giving of testimony. The situation in Kelly was more flagrant than here because there the objectionable question was answered to the prejudice of the defendants ,on trial, while here the objectionable questions were never answered because the Court sustained all objections before any answers were given. The opinion in Kelly was by this 2nd District Court and we took occasion to reiterate the rule regarding disposition of a motion for mistrial during progress of a criminal case as follows :
“On the question of the motion for mistrial, * * * such motion should never be granted in the midst of a criminal trial unless there is an absolute legal necessity to stop the trial and discharge the jury. In State ex rel. Alcala v. Grayson, 1945, 156 Fla. 435, 23 So.2d 484, the Supreme Court said:
‘In this state the rule has been long established and continuously adhered to that the power to declare a mistrial and discharge the jury should be exercised with great care and caution and should be done only in case of absolute necessity. Ellis v. State, 25 Fla. 702, 703, 6 So. 768; Allen v. State, 52 Fla. 1, 41 So. 593, 120 Am.St.Rep. 188, 10 Ann.Cas. 1085; Fails v. State, 60 Fla. 8, 53 So. 612, Ann.Cas.1912B, 1146.’
In the case sub judice, the trial Court certainly did not abuse its discretion in denying the motion for mistrial, but properly struck out the objectionable testimony complained of. While the answer was perhaps improper, the Court handled the difficult situation with propriety and will not be held in reversible error.” (Emphasis supplied).
 Asking a witness, even the defendant testifying in his own behalf, an improper question is not such prejudicial error as to warrant a mistrial where an objectionable question was ruled out by the Court. Morton v. State, Fla.App.1968, 205 So.2d 662; Triana v. State, Fla.App.1967, 204 So.2d 339; Garcia v. State, Fla.App.1967, 204 So.2d 340; Leonard v. United States, C.A.5 Fla. 1967, 386 F.2d 423; Brady v. State, Fla.App.1968, 208 So.2d 852. *426 And in any event the denial of a motion for mistrial is always largely in the discretion of the trial Judge. Prokos v. State, Fla.App.1968, 209 So.2d 484, and cases therein cited.
In the case of State ex rel. Hamm v. Smith, Fla.App.1968, 209 So.2d 876, also by this Court, the State had put on its testimony and rested, the defendant had put on in his behalf, six witnesses and finally a Dr. Franklin, a practitioner in clinical psychology who was to testify only as a character witness, attesting to the good reputation of the defendant on trial, Clayton Alvin Hamm, and to the bad reputation of the man who was killed, Charles Randolph Hamm. He was asked by the defense attorney if he had ever met Charles Randolph Hamm and he replied that “he was referred to me in March of 1961, after he had stolen a car and wrecked it — ”. The State Attorney then moved for a mistrial which the Court granted. Thereafter, in an original proceeding filed here, this Court issued its Rule Absolute in Prohibition, holding that because “there was no manifest urgency or necessity to discharge the jury” under the circumstances aforesaid, the granting of mistrial and discharge of the jury amounted to an acquittal and precluded a further trial as a matter of law.
 In the case sub judice, the posture of the case did not present any “absolute necessity” for a mistrial to be declared. The trial Judge had sustained uniformly all objections to the questions being asked. Actually, the only thing improper was the gratuitous statement by the prosecutor that “I want to point out to the jury that she didn’t want to testify”. While uncalled for, this statement fell far short of providing legal basis for a mistrial.
The judgment appealed is thereupon—
Affirmed.
LILES, C. J., and McNULTY, J., concur.