RAWLS, Acting Chief Judge.
Appellant-defendant, Foy Skipper, was charged by information with committing *635 the crime of assault with intent to commit murder. A jury verdict was returned finding him guilty of aggravated assault. He now .appeals from a judgment of conviction and a 'three years sentence.
Appellant’s meritorious point, on appeal is:
“Whether the trial court erred in allowing into evidence irrelevant and highly prejudicial testimony concerning the conduct of appellant’s son that was not material to appellant’s guilt.”
On a Sunday afternoon, November 25, 1973, Foy Skipper became involved in a fracas at his home which resulted in his being charged with the crime of assault with intent to commit murder. Foy’s involvement was a result of his son’s, Wade Skipper, activities on that same afternoon. A more detailed account of same will hereinafter be related. At the outset of the trial, defense counsel for Foy vigorously objected to the state mentioning in its opening statement, or into evidence, events that occurred in Holmes County in which appellant’s son, Wade Skipper, was involved. Defense counsel further noted that some “shooting” had occurred in Holmes County and that Wade arrived at Foy’s home in Washington County “being chased by police officers with cars marked being out of county”. The state responded:
“I .anticipate that the defense is going to raise in this case some question about the authority of these officers to be at the home of Foy Skipper in the first instance. I think the testimony as to what happened in Holmes County in regard to Officer Poole and Wade Skipper, the son, which will establish — will establish their authority to pursue him across the county line into this county and pursue him to the home, has a definite bearing on this issue.”
After listening to further statements of counsel, the following transpired:
“THE COURT: Objection is overruled but the record will reflect this is a continuing objection to this line of thought. Mr. Holley, I will not permit completely opening that keg of' worms. I will restrict your inquiry into it to a very limited reference of what did occur in Holmes County. You refer to the specific to establish why the officers were doing what they were and not allow it to be inquired into the extent that it would prejudice Mr. Skipper.
“MR. HOLLEY: May I offer to the court what I intend to offer?
“THE COURT: Yes.
“MR. HOLLEY: I intend merely to offer in way of evidence from Mr. Poole that the son who he was pursuing to the home did fire at home [sic] that’s why he was chasing him. He did fire upon the person or car of Officer Poole in Holmes County. He was pursuing him for this reason.”
This record reflects that the “keg of worms” envisioned by the trial court was not only opened, but that the jury was inundated with them.
Counsel for Foy cogently describes the testimony in this case as providing a plot for a “B” movie script entitled “Washington County Line” or “Sunday Fun in West Florida”. The spotlight of this trial was focused upon Foy’s son, Wade Skipper, and William Poole, a 22-year old City of Bonifay policeman.
Geography is important. The City of Bonifay is located in Holmes County. Tri-County Airport is located in a rural area in the northeast section of Holmes County, some distance from the city limits of Bonifay. Appellant Foy Skipper’s residence is situated in Washington County. Officer Poole testified that he was “dispatched” to the Tri-County Airport where it was reported that drag racing was being conducted. Upon arriving at the airport, he parked his car at the end of the runway *636 . . and got out of my car and I walked to the rear of my car and stood there. . . . and I saw Mr. Wade Skipper run to an orange 1966 Corvette. When come — when he come running back to his car, he had what appeared to be a nickle-plated [sic] hand gun in a holster.” He then related after Wade Skipper got into his car that:
“He put his car in reverse and smoked his tires and put the car in forward and drive, drove it directly at the Holmes County Deputy. When he did this I got into my car and turned my car on and went in pursuit of this man. Mr. Wade Skipper turned his car to the left in a circle with his left hand on the steering wheel and the right hand he threw a nickle-plated [sic] hand gun up and shot at me twice.”
Poole continued testifying that he was driving a police car with “two blue lights and siren in the middle and City of Boni-fay Police Department wrote on it”, and that “he [Wade Skipper] put a hole through the blue lamp”. Upon being interrupted by defense counsel, Poole said he did not mean the appellant Foy, but that it was Wade Skipper. The state then proceeded to introduce into evidence the blue light that Wade Skipper had allegedly shot out at the Tri-County Airport.[1] The following colloquy then ensued :
“THE WITNESS [Officer Poole]: I pursued this man on back roads—
“Q. [Mr. Holley] If you would tell us
“MR. MAYO, Excuse me, this man on trial ?
“THE WITNESS: Excuse me, Mr. Wade Skipper.
“THE WITNESS: When we left the airport, we took a right on the road to, leads you into the airport. He took another right that leads to a new bridge that was under construction and it wasn’t finished. He turned his car, Mr. Wade Skipper turned his car sideways in the road. I asked him to ‘Hold it, police officer.’ I got out of my car. He said, ‘Well, let’s go back around to the airport.’ I said, ‘Hold it right here.’ And at that time he slung his car into the ditch and went around me.”
Poole continued in relating how he pursued “him” on dirt roads; that one of the tires on “his” car had been shot out by a Holmes County deputy sheriff; and “When we were leaving the exit of the airport I shot the right rear tire out.” In answer to the question: “With your pistol ?”, Poole stated:
“Yes, sir, when we were like I said, we were back on these dirt roads, again which I don’t know, I shot out his right front tire. The tire went up an embankment and hit my car and I rolled over and the only other time I know of hitting Wade Skipper’s car is he took a wide left and it was clear and I hit the left side of his car somewhere, I know it [sic] hit it.
“I shot exactly six times and the six times were just in Holmes County. I never did shoot in Washington County.”
Poole continued testifying on direct that while pursuing Wade Skipper along dirt *637 roads, he radioed the Holmes County Sheriff’s Department for assistance and followed Wade to his father’s home, and it is at this point that appellant Foy appears for the first time in the script.
Poole testified that Foy was on the front porch when Wade Skipper “run into his house, come back with a shot gun and that’s when Mr. Foy Skipper was standing on the porch with the shot gun.” The state then adduced competent substantial evidence that Foy and Wade Skipper indiscriminately opened fire upon Poole and a Holmes County deputy sheriff, Melvin Deitz, who had responded to Poole’s call. The deputy sheriff responded with two shots from a .44 magnum rifle. Before the melee was calmed, three highway patrolmen and a Washington County deputy sheriff arrived on the scene, but they did not participate in the shoot out. In response to Mrs. Skipper’s (appellant’s wife) telephone call to the Washington County Sheriff’s office, Deputy Sheriff Alan Taylor arrived on the scene and calmed the storm. Taylor, unarmed, walked into the Skipper home (The Skippers testified at their invitation), took Wade into custody and carried him to “our jail”.
The foregoing facts speak for themselves. Appellant Foy was not an accomplice in his son’s Tri-County Airport escapade. The extensive and minutely detailed testimony of the state spotlights Wade Skipper as the protagonist in this drama. A simple statement by Poole that he was present at the Skipper home in pursuit of Wade Skipper, who had unlawfully shot at him, would have fully satisfied the trial court’s ruling that it would restrict the state’s inquiry to a very limited inquiry of what happened in Holmes County. The state’s evidence is that the appellant was peacefully at his home on this Sunday afternoon when his son made a mad dash inside his home with a city policeman from a neighboring county in hot pursuit.
The state relies upon the oft quoted legal phrase of “res gestae” and cites at length from Corpus Juris Secundum which states, inter alia:
“Matters are not admissible as part of the res gestae simply because they are contemporaneous with the main event; relation in time is not the sole criterion; the matters must be so connected with the main transaction as to be virtually and effectively a part thereof.” [2]
If Wade Skipper had been put to trial, the matters beginning with the Tri-County Airport episode would have been admissible. The defendant was appellant, Foy Skipper, not Wade, although in several instances some confusion is shown as to who was the defendant. Thus the matter of which Foy was charged, i. e., his premeditated design and intent to kill one Melvin Deitz, were not “so connected” with Wade’s Holmes County escapade as to be “virtually and effectively” a part of Foy’s trial.
The state cites as Florida authority Kennedy v. State,[3] wherein the Supreme Court, in discussing “res gestae”, held:
“Generally, it is harmful to admit evidence of other or collateral crimes independent of and unconnected with the crime for which the defendant is on trial.

“The general rule, supra, has several distinct exceptions, well supported by precedent, among which is that such evidence is admissible when it is relevant as part of the res gestae, or tends to establish the identity of the person commit *638 ting the crime laid in the indictment, or where it is impossible to give a complete or intelligent account of the crime charged without referring to the other crime.”
Kennedy was charged with having in his possession moonshine whiskey. The state, in proving the time of the charged offense, introduced testimony of witnesses which established the fact that Kennedy had previously been arrested on a similar charge. Unlike Kennedy, it was possible in the instant case to give a complete or intelligent account as to appellant’s part in the “shootout” without detailing Wade Skipper’s independent foray. The exception to the rule of hearsay[4] that is termed “res ges-tae” is not an elixir that transforms a “keg of worms” into respectable evidence.
Watkins v. State [5] controls. There, the Supreme Court, in discussing the rule “res inter alios acta” in considering collateral facts analogous to those present in the instant case, stated :
“The rule ‘res inter alios acta’ forbids the introduction against an accused of evidence of collateral facts which by their nature are incapable of affording any reasonable presumption or inference as to the principal matter in dispute, the reason being that such evidence would be to oppress the party affected, by compelling him to be prepared to rebut facts of which he would have no notice under the logical relevancy rule of evidence, as well as prejudicing the accused by drawing away the minds of the jurors from the point in issue.”
Reversed and remanded for a new trial.
SMITH, SAMUEL S., Associate Judge, concurs.
McCORD, J., dissents.

. Defense counsel vigorously objected as follows :
“MR. MAYO: Your Honor, we’re going beyond what the Court announced you were going to allow. You said you were going to allow this and again I’m going to announce to the court I’m in the position of having some forty something witnesses to prove a different set of facts, that I’m of the opinion it is not necessary for me to do. This is going beyond the point because it has nothing to do with Foy Skipper on trial here today in Washington County about something that occurred in that county. The Court’s ruling was you would allow just enough evidence in to what the police officers knew, if the State county, could, to justify the chase.
“THE COURT: Objection overruled.”

. 22A C.J.S. Criminal Law § 662(1) (1961).

. Kennedy v. State, 140 Fla. 124, 191 So. 193 (1939).

. O. Torcía, Wharton’s Criminal Evidence, § 297 (13th Ed. 1972) at 60-62.

. Watkins v. State, 121 Fla. 58, 163 So. 292 (1935).