344 So.2d 1328 (1977)
Bobby CARVER, Appellant,
v.
STATE of Florida, Appellee.
No. CC-283.
District Court of Appeal of Florida, First District.
April 29, 1977.
*1329 Richard W. Ervin, III, Public Defender, and Louis G. Carres, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and Donald K. Rudser, Asst. Atty. Gen., for appellee.
RAWLS, Judge.
The two points posed by appellant, viz:
The Trial Court Prejudicially Erred in Refusing to Instruct the Jury on the Necessarily Included Lesser Offenses of Assault, Battery, and Assault and Battery. The Trial Court Prejudicially Erred in Overruling Appellant's Objections to the Hearsay Testimony of Robert Carver and in Permitting Said Testimony to be Presented to the Jury Under the Res Gestae Exception.
are meritorious; thus, the judgment of conviction must be reversed.
Carver was convicted of committing a lewd and lascivious assault upon his 10-year old female child. At the charge conference, the trial judge stated:
"... I don't consider that the assault is a lesser included offense, but I am going to define assault. I am going to give the jury the definition of assault, because this case, if anything, is lewd and lascivious assault... . I'm not going to charge it [assault] as a lesser included offense... ."
Counsel for Carver then objected to the court's refusal to instruct on the lesser included offenses of assault and assault and battery.[1]
"Multitudinous" is an apt adjective to describe the words that have been written in this jurisdiction on the subject of lesser included offenses.[2] The state relies, primarily, upon the Supreme Court's opinion in DeLaine v. State, 262 So.2d 655 (Fla. 1972), wherein the defendant was charged with rape. The Supreme Court held as harmless error the refusal of the trial court to instruct upon a lesser included offense which is two steps[3] removed. In so holding, the court pointed out that the evidence overwhelmingly established repeated penetration of the victim; that the jury had the opportunity to convict of the first step lesser included offense; and since the jury returned *1330 a verdict of guilty of the primary offense, failure to instruct upon assault and assault and battery was harmless error. However, State v. Terry[4] is directly on point. The Supreme Court specifically held that when an accused is charged with committing an offense that requires proof of some physical contact with the victim, the greater crime necessarily includes the crime of assault and battery. Sufficiency of the evidence to support the crime charged does not obviate the necessity of appropriate instructions being given on lesser offenses included within that charge. This court held in Allison v. State, 162 So.2d 922, "that in Florida simple assault and assault and battery are lesser offenses necessarily included in the crime of assault with intent to commit rape". In recently reaffirming its decision in State v. Terry, supra, the Supreme Court held in Lomax v. State:[5]
"... when failure to instruct on a lesser-included offense constitutes error, the harmless error doctrine will not be invoked. Any such failure constituted prejudicial error and is thus per se reversible."
It is legally impossible to prove an assault upon a child of the age of 10 years, in a lewd, lascivious or indecent manner, without also proving bare assault or assault and battery.
Appellant's second point relates to the trial court's permitting hearsay testimony to be presented to the jury under the res gestae exception. The victim's 13-year old brother testified that about "a month or two before it was reported", his sister told him about an hour after she had left her father's room that "daddy had been messing with her ... she told me, you know, daddy made her pull her pants down." On cross examination, this witness testified that he had noticed Bernice (the victim) going into her father's room about four or five times a week over a period of time during October, November and December. At one point, when he was being examined on cross, the brother testified as follows:
"Q [defense counsel] Now, the time that she told you about this  can you tell us about that? I think she told you in November about this?
A Yes, sir.
Q How come she told you at that time?
A Because I asked her what was happening.
Q And did you see her in the room that day with her father?
A No, sir.
Q You didn't see her in the room that day when she told you the story about what happened?
A I don't actually remember.
Q Where did she tell you this story, do you remember?
A No, sir.
Q Was it in the house or outside the house?
A I think it was inside the house.
Q In the house?
A Yes, sir.
Q Was your father home?
A No, sir; I think he was gone.
Q He was gone?
A Yes, sir.
Q How long was he gone  do you know?
A No, sir.
Q Was he there that day?
A Sir?
Q Was he there that day?
A I think so; yes, sir.
Q And did Bernice tell you this in the nighttime?
A I think it was daytime.
Q You think it was daytime?
A Yes, sir.
Q Where was your father  do you know?

*1331 A No, sir.
Q What time did your father leave  do you know that?
A No, sir.
Q And did you see your father and Bernice in the room that day?
A No, sir; I don't think so.
Q You don't think you did. That's the first time Bernice had told you about what happened?
A Yes, sir."
In the absence of the jury, the witness testified at one point that the second time was in the daytime, while at a later point, he remembered it was in the nighttime when she told him; he did not see his sister leave the bedroom and that it was "about an hour later" when she told him. The trial court denied defendant's motion for mistrial with the observation that: "... you may inquire along the lines of your questioning, that he had questioned her the first time in November." Further, cross examination elicited from this witness the fact that the victim was not upset when she came out of her father's room and that the witness told his mother of this event "during Christmas".
The term "res gestae"[6] comprehends a situation which presents a startling or unusual occurrence sufficient to produce a spontaneous and instinctive reaction, during which interval certain statements are made under such circumstances as to show lack of forethought or deliberate design in the formulation of content. In determining spontaneity, the time element is weighed along with such factors as the condition of the victim at the time of the particular utterance. Absence of evidence that the victim was dazed, excited, hysterical, bruised or disheveled, at the time of the utterance, has been stressed in cases where such utterance was held not a part of the res gestae. A key element in determining whether a statement is or is not a part of the res gestae is the interval of time between the principal act or main event and when the statement is made.[7] Here, the complaining witness testified that the first incident constituting the crime charged occurred on her birthday in August, but her statement to her brother admitted as part of the res gestae was made one hour after another occurrence in November.
Weighing the victim's testimony as to the frequent transgressions by her father during the period intervening between August and November, together with the absence of any evidence that she was dazed, hysterical or otherwise upset at the time she made the statement to her brother, together with the numerous previous opportunities that were available for her to utter such statements to her mother and other persons living in the home, along with the lapse of one hour time element, leads us to the inescapable conclusion that this record does not justify applying the res gestae exception to the hearsay rule.
The judgment appealed is reversed and the cause remanded for a new trial.
BOYER, C.J., concurs.
SMITH, J., concurs in part, dissents in part.
SMITH, Judge, concurring in part and dissenting in part:
I agree the judgment must be reversed because of error in the jury charge, but I do not conceive it was error to admit evidence of the declaration made by the ten-year-old victim in this case. In my opinion sufficient spontaneity was shown to justify receipt of the evidence. The "res gestae" exception to the hearsay exclusion should be liberally applied to admit such declarations of young children, especially when *1332 they corroborate the child's testimony at trial. See Gray v. State, 184 So.2d 206 (Fla.2d DCA 1966), cert. den., 192 So.2d 493 (Fla. 1966); Fitter v. State, 261 So.2d 512 (Fla.3d DCA 1972); Annot., 83 A.L.R.2d 1368 (1962).
NOTES
[1] The charged offenses were alleged to have occurred between August 1, 1975, and December 24, 1975. During that time Secs. 784.02 and .03, Fla. Stat. (1973), made assault and assault and battery separate offenses.
[2] Hammer v. State, Fla.App., 343 So.2d 856, opinion filed December 9, 1976; Hand v. State, 199 So.2d 100 (Fla. 1967); Brown v. State, 206 So.2d 377 (Fla. 1968); State v. Anderson, 270 So.2d 353 (Fla. 1972); Silver v. State, 174 So.2d 91 (Fla. 1st DCA 1965); Rafuse v. State, 209 So.2d 260 (Fla. 1st DCA 1968), cert. den., Fla., 214 So.2d 626; State v. Terry, 336 So.2d 65 (Fla. 1976).
[3] Brown v. State, supra.
[4] State v. Terry, supra.
[5] Lomax v. State, Fla., 345 So.2d 719, opinion filed March 31, 1977.
[6] "The exception to the rule of hearsay that is termed `res gestae' is not an elixir that transforms a `keg of worms' into respectable evidence." Skipper v. State, 319 So.2d 634 (Fla. 1st DCA 1975).
[7] Annot., 19 A.L.R.2d 579 (1951).