Dewey R. HARMON, Petitioner,

v.

Charles ANDERSON, Respondent.

Civ. A. No. 79–73222.

United States District Court,
E. D. Michigan, S. D.

Sept. 4, 1980.

Dewey R. Harmon in pro. per.

Frank J. Kelley, Atty. Gen., by Keith D. Roberts, Asst. Atty. Gen., Corrections Division, Lansing, Mich., for respondent.

## OPINION

GILMORE, District Judge.

Dewey R. Harmon, petitioner, was convicted by a jury in the Branch County, Michigan, Circuit Court on February 26, 1977, of criminal sexual conduct in the first degree, in violation of M.C.L. § 750.-520b(1)(d).

On March 21, 1977, he was sentenced to from 10 to 20 years imprisonment. His conviction was affirmed by the Michigan Court of Appeals on May 12, 1978, and on April 6, 1979, the Supreme Court of Michigan denied leave to appeal. He is presently imprisoned at the State Prison of Southern Michigan, and has applied for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

Petitioner's first claim of error is that the jury was tainted during voir dire by the remarks of a prospective juror who stated that she did not like Petitioner, and had once seen him drunk in a bar. The juror was excused by the court for cause, but the petitioner contends that the remark in open court nevertheless tainted the entire jury panel. The colloquy upon which this objection arises follows: (transcript, pages 41–42)

"THE COURT: You think you might be prejudiced?

JUROR NO. 10: Well, I haven't known Mr. Harmon, I haven't seen Mr. Harmon for quite a few years. It's been years ago.

THE COURT: You know the family?

JUROR NO. 10: No, not well, no. As I say, years and years ago, about fifteen years.

THE COURT: You have had no association with either Mr. Harmon or his mother?

JUROR NO. 10: The only association I had with Mr. Harmon was about four months ago when I went to the Dutch Uncle, he was intoxicated in there.

\*      \*      \*      \*      \*      \*

THE COURT: In view of the fact that you know  .  .  .  the Defendant, how do you  .  .  .  so you still feel that you could sit as a fair and impartial juror in this matter?

JUROR NO. 10: Well, I  .  .  .  I really don't like to say I don't like somebody. But, I don't like Mr. Harmon and I–

THE COURT: You may step down then. Thank you."

As the Court understands petitioner's contention, it is that because Juror No. 10 made the statements she did, this somehow tainted the entire panel. There appears to be little basis to support this contention. The juror who stated that she had a bias against the petitioner was excused from jury duty. After the juror was excused, the questioning of other possible jurors continued for 200 pages without a single reference to the prior comments of the excused juror. Every juror consistently expressed a willingness to reach a decision based solely on the evidence.

■ There is no evidence to show that the statements of the excused juror in any way tainted the proceedings, or denied petitioner of a right to an impartial jury. The mere fact that the juror stated that she knew and did not like Mr. Harmon, and was later excused, is no basis for claiming that the entire panel was tainted. If such were the case, every time a juror stated an opinion, favorable or unfavorable, about a party, and was later excused, it would be almost impossible to obtain a jury, particularly in smaller communities. Such is not the law.

The second claim is that physical evidence was admitted at the trial without the chain

of custody of the items having been established. The facts show that after the rape, the police took the victim to a local hospital for a physical examination. This examination included the taking of a vaginal smear to test for the presence of sperm. However, hospital personnel could not offer testimony about the exact chain of custody from the doctor who took the laboratory slide to the pathologist who examined it. The record indicates a reasonable probability that the smear taken from the victim was the one ultimately examined. The pathologist's report was introduced into trial.

Evidentiary rulings of a state court, or the improper admission of evidence under state law, do not give rise to constitutional questions cognizable in habeas corpus proceedings, unless the ruling or admission of evidence impugns the fundamental fairness of the trial. See *Gemmel v. Buchkoe*, 358 F.2d 338, (CA6) cert. den., 385 U.S. 962, 87 S.Ct. 402, 17 L.Ed.2d 306, (1966); *Burks v. Egeler*, 512 F.2d 221, (CA6) cert. den., 423 U.S. 937, 96 S.Ct. 297, 46 L.Ed.2d 270 (1975).

Further, a possible break in a chain of custody does not necessarily render the physical evidence inadmissible, but merely raises questions as to the weight to be accorded to the evidence. *United States v. White*, 569 F.2d 263 (CA5), cert. den., 439 U.S. 848, 99 S.Ct. 148, 58 L.Ed.2d 149 (1978). Evidence concerning the chain of custody is merely introduced to show the reasonable probability that the smear taken from the victim was the one ultimately examined. The admission of the pathologist's report into evidence did not deny Petitioner a fair trial.

Petitioner's final claim concerns the admission of hearsay statements as excited utterances. He claims that the statements were improperly admitted under the "res gestae" exception to the hearsay rule. Although many trial and appellate courts speak of the "res gestae" exception to the hearsay rule, there is no such exception. As Wigmore points out:

"The phrase, res gestae, is, in the present state of the law, not only entirely useless, but even positively harmful. It is useless, because every rule of evidence to which it has ever applied exists as a part of some other well-established principle, and can be explained in terms of that principle." 6 Wigmore Evidence ¶ 1767.

And Morgan points out:

"The marvelous capacity of a Latin phrase to serve as a substitute for reasoning, and the confusion of thought inevitably accompanying the use of inaccurate terminology, are nowhere better illustrated than in the decisions dealing with the admission of evidence as res gestae. It is probable that this troublesome expression owes its existence and persistence in our law of evidence to an inclination of judges and lawyers to avoid the toilsome exertion of exact analysis and precise thinking." 31 Yale Law Journal, 220.

The facts upon which error is claimed are that after the rape petitioner and his brother drove Mrs. Byrd, the victim, to town and released her on a city street. She immediately went to a near-by house and started to bang on the front door. In response to the noise, two persons living in the home opened the door and permitted the victim to enter. The victim then stated she had been raped by two men and needed help. The persons living in the home, a wife and the sixteen year old daughter of the owner, were allowed to testify to this declaration.

Clearly the declaration was an excited utterance which has been accepted as an exception to the hearsay rule from time immemorial. Both the Michigan Rules of Evidence, (which were not yet in effect at the time of the trial of this case), and the Federal Rules of Evidence provide in Rule 803(2):

"(2) *Excited Utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition".

The Michigan Law has, without exception, recognized the excited utterance as an exception to the hearsay rule. See *Martin Parry Corp. v. Burner*, 259 Mich. 621, 244 N.W. 180 (1932); *Browning v. Spiech*, 63 Mich.App. 271, 234 N.W.2d 479 (1975).

Generally speaking, the constitutional right of confrontation is not coterminous with the hearsay rule, although both stem from the same roots in the English common law. See F. Heller, the Sixth Amendment, p. 104 (1951).

The Supreme Court of the United States has been most reluctant to give constitutional status to exceptions to the hearsay rule. See *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489, 1970; *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213, 1970. The basic constitutional issue is whether the particular statement is sufficently reliable to warrant its admission. *United States v. Puco*, 476 F.2d 1099 (CA2), cert. den. 414 U.S. 844, 94 S.Ct. 106, 38 L.Ed.2d 82 (1973); *Ohio v. Roberts,* —— U.S. ——, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

The reliability of the excited utterance, which is a long-established exception to the hearsay rule, rests upon the circumstances under which the declaration is made. Generally, three essential elements are necessary. First, there must be an event startling enough to cause nervous excitement. Second, the statement must have been made before there had been time to contrive or misrepresent. And, third, the statement must be made while the person is under the stress of excitement caused by the event. McCormick points out that the rationale for the exception lies in the special reliability which is regarded as furnished by the excitement superseding the declarant's powers of reflection and fabrication. *McCormick on Evidence* (2nd Edition), West Publishing Co. (1972) ¶ 297, p. 704.

Here the statement was made within a short time after the rape, and within minutes of the victim's release. There is no question but that, at the time of the statement, the victim was still under the strain of the incident. The declaration meets the requirements of an excited utterance. Furthermore, since the victim had testified at trial, the challenged testimony was, in fact, cumulative.

The evidence was properly received under the excited utterance exception to the hearsay rule. There was no deprivation of due process by the receipt of this evidence. For the reasons given, the application for the writ of habeas corpus is denied.