419 So.2d 394 (1982)
George JACKSON, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 80-795.
District Court of Appeal of Florida, Fourth District.
September 15, 1982.
*395 Richard L. Jorandby, Public Defender, and Jon May, Asst. Public Defender, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Andrea T. Mohel, Asst. Atty. Gen., West Palm Beach, for appellee.
GLICKSTEIN, Judge.
An information was filed against appellant, charging him with indecent assault upon a female child. After a jury trial appellant was found guilty and sentenced to nine years in prison, with credit for time already served. The trial court retained jurisdiction over part of appellant's sentence pursuant to section 947.16, Florida Statutes (1979), and ordered him to pay (a) court costs of $12 and (b) the public defender an attorney's fee of $1,000 plus costs pursuant to section 27.56, Florida Statutes (1979). We affirm the judgment and all of the sentence but for that portion which assessed costs of any nature. As to such assessment of costs we remand for vacation thereof for which appellant need not be present.
Appellant argues that the trial court violated his sixth amendment right to confront witnesses and allowed inadmissible hearsay into evidence. The court, he says, erroneously permitted the mother of the child whom he was alleged to have assaulted to testify that her child told her, "That man [referring to appellant] hurt me," shortly after the incident, and, "That man [again referring to appellant] in Killer's car hurt me," approximately an hour or so later.
The record establishes that appellant and James Lee (Killer) Montgomery paid the three-year-old victim's mother a visit on New Year's Day. Immediately after their arrival, appellant picked up the child, kissed her, and took her outside to Montgomery's automobile. The mother and Montgomery remained in the living room for a few minutes and later joined the others in the automobile where they listened to tapes. The two men then left.
On entering the home with her mother, the child made the first of the two remarks in question. The mother did not take the child's remark seriously and went to the home of her sister-in-law to visit for an hour or longer. On her return home, however, her child made the second remark; by this time she was bloody. The gynecologist who examined the child at the hospital emergency room testified at trial that he found a small laceration at the entrance of her vagina. The child, still three years of age, did not testify at the trial because she simply would not speak.
*396 The trial judge properly admitted into evidence the remarks the child made shortly after the attack upon her. They clearly were excited utterances within the meaning of section 90.803(2), Florida Statutes (1979), which does not require the exclusion as hearsay of an:
(2) EXCITED UTTERANCE.  A statement or excited utterance relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
Federal Rule of Evidence 803(2), excepting the following from the hearsay rule, is almost identical to the Florida rule:
(2) Excited utterance.  A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
The same arguments appellant makes in this case have been rejected in a number of federal cases which have applied the foregoing federal rule. United States v. Iron Shell, 633 F.2d 77 (8th Cir.1980), cert. denied, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981) (nine-year-old girl's statements to female police officer within one hour and fifteen minutes of attempted rape); United States v. Nick, 604 F.2d 1199 (9th Cir.1979) (three-year-old boy's statement to his mother after the mother picked him up from the male defendant babysitter's home); Harmon v. Anderson, 495 F. Supp. 341 (E.D.Mich. 1980) (adult's statements made immediately after rape to occupants of home to where victim fled). Judge Gilmore noted in Harmon:
The reliability of the excited utterance, which is a long-established exception to the hearsay rule, rests upon the circumstances under which the declaration is made. Generally, three essential elements are necessary. First, there must be an event startling enough to cause nervous excitement. Second, the statement must have been made before there had been time to contrive or misrepresent. And, third, the statement must be made while the person is under the stress of excitement caused by the event. McCormick points out that the rationale for the exception lies in the special reliability which is regarded as furnished by the excitement superseding the declarant's powers of reflection and fabrication. McCormick on Evidence (2nd Edition), West Publishing Co. (1972) ¶ 297, p. 704.
Id. at 344.[1]
Appellant next argues that the trial court erred in failing to grant a mistrial during the testimony of the victim's eight-year-old cousin. To the surprise of counsel, the cousin said that when appellant picked up the victim in the home he "stuck his finger up in her"; a fact which she obviously never observed as the alleged incident took place in Montgomery's automobile. Although the statement may have caused momentary havoc during the trial, we find no error in the trial judge's denial of appellant's motion for mistrial. First, the trial judge, immediately after appellant's objection and before any motion was made, instructed the jury to disregard the cousin's testimony as to what appellant had done. Second, after denial of the motion, counsel for appellant and the state procured testimony from the witness that she only saw appellant kiss the victim. So the jury, ultimately, was not misled. Third, as stated in Salvatore v. State, 366 So.2d 745, 750 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979):
Florida case law clearly states that a motion for a declaration of a mistrial is addressed to the sound discretion of the *397 trial judge. Strawn v. State ex rel. Anderberg, 332 So.2d 601 (Fla. 1976); Paramore v. State, 229 So.2d 855 (Fla. 1969); modified on other grounds, 408 U.S. 935, 92 S.Ct. 2857, 33 L.Ed.2d 751 (1972); Tate v. Gray, 292 So.2d 618 (Fla.2d DCA 1974); Warren v. State, 221 So.2d 423 (Fla. 2d DCA 1969); Prokos v. State, 209 So.2d 484 (Fla.3d DCA 1968); Baisden v. State, 203 So.2d 194 (Fla.4th DCA 1967); Garcia v. State, 142 So.2d 318 (Fla.2d DCA 1962). In this State the rule has been long established and continuously adhered to that the power to declare a mistrial and discharge the jury should be exercised with great care and caution and should be done only in cases of absolute necessity. State ex rel. Wilson v. Lewis, 55 So.2d 118 (Fla. 1951); State ex rel. Alcala v. Grayson, 156 Fla. 435, 23 So.2d 484 (1945); King v. State, 258 So.2d 21 (Fla.2d DCA 1972); Warren, supra; Kelly v. State, 202 So.2d 901 (Fla.2d DCA 1967).
Next, appellant contends the trial court erred in denying his motion for acquittal. We do not agree with this contention:
The proper test on appeal of a denial of a motion for judgment of acquittal is whether the jury as the trier of fact might reasonably conclude that the evidence excluded every reasonable hypothesis but that of guilt. Rodriquez v. State, 379 So.2d 657 (Fla. 3d DCA 1980); Zuberi v. State, 343 So.2d 664 (Fla. 3d DCA 1977). All facts introduced into evidence are admitted by the defendant, and the court must draw every conclusion favorable to the state. Codie v. State, 313 So.2d 754 (Fla. 1975); Rodriquez v. State, supra; Matrascia v. State, 349 So.2d 735 (Fla. 3d DCA 1977), cert. denied 360 So.2d 1249 (Fla. 1978). The motion should not be granted unless there is no legally sufficient evidence on which to base a verdict of guilt. Downer v. State, 375 So.2d 840 (Fla. 1979); Everett v. State, 339 So.2d 704 (Fla. 3d DCA 1976).
Knight v. State, 392 So.2d 337, 338-39 (Fla. 3d DCA), petition for review denied, 399 So.2d 1143 (Fla. 1981). The evidence presented indicated the victim was alone with the appellant in Montgomery's automobile for a period of minutes, she complained immediately thereafter that appellant had hurt her and, about one hour later, when the victim identified appellant again as having hurt her, she was bleeding. While it is possible that the victim was injured by someone or something other than the appellant and his actions, there clearly was legally sufficient evidence upon which to base a verdict of guilty. Accordingly, the trial court did not err in denying appellant's motion.
Additionally, appellant claims the assessment of court costs of $12 and the $1,000 attorney's fee payable to the public defender were improper. The state correctly concedes that because appellant was adjudged insolvent he should not have been assessed the $12 court costs. State v. Byrd, 378 So.2d 1231 (Fla. 1979). With respect to the remainder of the sentence which recites: "DEFENDANT ALSO TO PAY $1,000 PUBLIC DEFENDER FEE AND ALL COST [sic]" we observe that as to the attorney's fee assessed, appellant only stated in his main brief that the constitutionality of section 27.56, Florida Statutes (1979), was before this court in Hoffman v. State, 413 So.2d 150 (Fla. 4th DCA 1982); and that our decision therein would be dispositive. He presented us with no argument in his briefs to support holding the statute unconstitutional, and we subsequently did not rule upon the constitutionality of the statute in Hoffman. Further, appellant made no argument that the trial court failed to follow the statutory procedure.[2] *398 Accordingly, there is nothing before us upon which to base a reversal of the trial court's assessment of the attorney's fee. Similarly, there has been no argument, constitutional or otherwise, with respect to the phrase, "and all cost [sic]." Nevertheless, although the sentence referred, by the subject phrase, to those costs contemplated by section 27.56, Florida Statutes (1979),[3] there was no amount specifically assessed. Accordingly, the phrase is legally ineffective to assess anything, regardless of the absence of argument. Section 27.56 contemplates an order which recites a specific amount upon which a judgment can be recorded.[4]
Appellant makes one more argument. It is similar, however, to one unsuccessfully made in Borden v. State, 402 So.2d 1176 (Fla. 1981), and we find that case dispositive adversely to appellant.
DOWNEY and HURLEY, JJ., concur.
NOTES
[1] Judge Gilmore also made the following observation:

Although many trial and appellate courts speak of the "res gestae" exception to the hearsay rule, there is no such exception. As Wigmore points out:
"The phrase, res gestae, is, in the present state of the law, not only entirely useless, but even positively harmful. It is useless, because every rule of evidence to which it has ever applied exists as a part of some other well-established principle, and can be explained in terms of that principle." 6 Wigmore Evidence ¶ 1767.
495 F. Supp. at 343.
[2] Section 27.56(7) provides:

The court having jurisdiction of the defendant-recipient may, at such stage of the proceedings as the court may deem appropriate, determine the value of the services of the public defender or appointed private legal counsel, and costs, at which time the defendant-recipient, after adequate notice thereof, shall have opportunity to be heard and offer objection to the determination, and to be represented by counsel, with due opportunity to exercise and be accorded the procedures and rights provided in the laws and court rules pertaining to civil cases at law.
[3] Section 27.56(1)(a) provides in part:

Such costs may include the cost of depositions, investigative costs, witness fees, the cost of psychiatric examinations, or other reasonable costs specially incurred by the county for the defense of the defendant in criminal prosecutions within the county. Costs shall not include expenses inherent in providing a constitutionally guaranteed jury trial or expenditures in connection with the maintenance and operation of government agencies that must be made by the public irrespective of specific violations of law.
Such costs are to be finally determined.
[4] We note that our sister court, in Anderson v. State, 415 So.2d 49 (Fla. 2d DCA 1982), has held that an adjudication of indigency is no prohibition to a subsequent judgment for costs under this section.