510 So.2d 615 (1987)
Bret Edmund JANO, Appellant,
v.
STATE of Florida, Appellee.
No. 84-831.
District Court of Appeal of Florida, Fourth District.
June 24, 1987.
Rehearing Denied July 22, 1987.
*616 Richard L. Jorandby, Public Defender, and Robert E. Adler, Asst. Public Defender, West Palm Beach, for appellant.
Robert Butterworth, Atty. Gen., Tallahassee, and Carolyn V. McCann, Asst. Atty. Gen., West Palm Beach, for appellee.
STONE, Judge.
The defendant was convicted of the sexual battery of his 2 1/2 year old daughter, and sentenced to life in prison. The incriminating evidence consisted substantially of hearsay testimony admitted under either the spontaneous statement or excited utterance exceptions to the hearsay rule.
Section 90.803(1) and (2), Florida Statutes (1979), provides:
(1) Spontaneous statement.  A spontaneous statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter, except when such statement is made under circumstances that indicate its lack of trustworthiness.
(2) Excited utterance.  A statement or excited utterance relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
These exceptions encompass evidence frequently considered under what was referred to as the res gestae exception was referred to as prior to the adoption of the Florida Evidence Code. State v. Johnson, 382 So.2d 765 (Fla. 2d DCA 1980); 1976 Law Revision Council Note to subsections (1) and (2) of § 90.803, 6C Fla. Stat. Ann. 267 (1979).
Upon review of the evidence, we conclude that the state has failed to meet its burden of demonstrating that the requirements of the evidence code have been met. The admission of the hearsay statements was therefore error.
The defendant lived alone. The child was cared for by a sitter, Helen Nirenberg, a primary witness for the state. Ms. Nirenberg took care of the child at her house on a fairly regular basis for a period of a month and a half. She testified that on the first day the child was dropped off, April 14th, she observed redness and swelling in the child's vaginal area while giving her a bath. The witness testified that on a couple of occasions the child told her that her daddy put things in her. She also said that the child would cry out during the night, "daddy get off me." The testimony of the babysitter is not clear with respect to the times that the hearsay statements were made. This may have been caused, in part, by interruption to her testimony.
Rachel Brown, a friend of Helen Nirenberg, testified that on the second day the child was with the babysitter, April 15th, the child pointed to her vagina, saying that is where her daddy hurts her.[1]
Another witness, a consultant with the child protection team, testified that he saw the child on May 21st, five days after the child had last been with her father. He showed the child anatomically correct dolls used with children having difficulty verbalizing. He testified that she threw the male doll to the floor and kicked her foot near it, saying "go away daddy."
Hearsay objections to all of the above statements of the child were overruled. A witness from a sexual assault treatment center said that when the child saw the babysitter in the hall of the courthouse she cried, "no go down there, daddy's coming back." On cross-examination, appellant's mother, a defense witness, confirmed that on occasions "too numerous to tell", the child pointed to "her privates" and said that her daddy had hurt her.
The child did not appear. There is no indication in the record why she did not testify, nor whether she would have been competent to do so. A doctor testified that an examination revealed a hymen opening that was large for the child's age, but not torn, and a bruise in the area near the anus which was apparently caused by repeated pressure consistent with sexual abuse. *617 The doctor also noted redness which was not as significant as the bruise.
The appellant contends that the trial court erred in admitting the hearsay statements, maintaining that the state failed to lay a sufficient predicate that the statements were made immediately following the episodes of abuse, or that the child was in an excited frame of mind.
In Carver v. State, 344 So.2d 1328 (Fla. 1st DCA), cert. denied, 352 So.2d 174 (Fla. 1977), the court presented the standard for determining whether a statement is part of the res gestae exception:
The term "res gestae" comprehends a situation which presents a startling or unusual occurrence sufficient to produce a spontaneous and instinctive reaction, during which interval certain statements are made under such circumstances as to show lack of forethought or deliberate design in the formulation of content. In determining spontaneity, the time element is weighed along with such factors as the condition of the victim at the time of the particular utterance. Absence of evidence that the victim was dazed, excited, hysterical, bruised or disheveled, at the time of the utterance, has been stressed in cases where such utterance was held not a part of the res gestae. A key element in determining whether a statement is or is not a part of the res gestae is the interval of time between the principal act or main event and when the statement is made.
Id. at 1331 (footnotes omitted). Similarly, in Appell v. State, 250 So.2d 318 (Fla. 4th DCA), cert. denied, 257 So.2d 257 (Fla. 1971), this court said in determining admissibility under res gestae:
Time is quite important. Naturally the more time elapsing, the less chance of a spontaneous reflection on the occurrence. Periods of up to a day have been held not to preclude spontaniety [sic], while other cases have held several minutes to be too long... . The feeling is that the factual situation in each instance will set its own pattern of time.
Id. at 321.
The record before us does not reveal the length of time that elapsed between the criminal incidents and the hearsay statements. The witnesses did testify that the statements were spontaneous and not in response to questioning. For a hearsay exception to be permitted, the utterance must have been made immediately following the event or while the declarant was in an excited state of mind caused by the incident. See Salter v. State, 500 So.2d 184 (Fla. 1st DCA 1986); Begley v. State, 483 So.2d 70 (Fla. 4th DCA 1986); Jackson v. State, 419 So.2d 394 (Fla. 4th DCA 1982); Lyles v. State, 412 So.2d 458 (Fla. 2d DCA 1982); Carver v. State. But cf. Monarca v. State, 412 So.2d 443 (Fla. 5th DCA 1982) (while time is an important factor, spontaneity of utterance probably most controlling).
In Salter, the court held that the statements of a five year old to a child protection team counselor several hours after a sexual assault were not admissible as excited utterances. The court ruled that the state failed to demonstrate that the statements were made while the child was still in an excited state of mind, and before she had had the opportunity to reflect or deliberate.
In Begley, the defendant was charged with sexual battery upon his three year old daughter between the 7th and the 22nd day of July. The mother testified that on the evening of the 22nd, the daughter told her that she had a secret between her and her father, and that "`her father had licked her p____y'." 483 So.2d at 72. This court held that the excited utterance argument by the state lacked merit, and that the statement constituted inadmissible hearsay:
since the state failed to lay any predicate that the victim's statement to her mother was made immediately after the event or at her first opportunity to complain and that the statement was made under the stress of excitement caused by the event. Jackson v. State, 419 So.2d 394 (Fla. 4th DCA 1982); Lyles v. State, 412 So.2d 458 (Fla. 2d DCA 1982). There is no indication in the record as to when within the two-week period the incidents occurred, nor is there any indication as to how long *618 she had been home before she made the statement.
Id. at 72-73.
However, in Begley the court went on to find the testimony admissible on other grounds.
In Lyles, the defendant was charged with sexually abusing his four year old step-daughter late one evening. The next day, the child told an officer that her daddy had "messed her up ... in the oranges by the graveyard". Id. at 459. The court held that the statements were not within the spontaneous statement or excited utterance exceptions, and were thus not admissible. In reversing the conviction, the court said:
In order for the spontaneous statement exception to the hearsay rule to be applicable, there must be some occurrence startling enough to produce nervous excitement and render the utterance spontaneous and unreflecting. The utterance must have been made before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance, and the utterance must relate to the circumstances of the occurrence preceding it... .
There was no testimony to show that Heather was dazed, excited, or hysterical, or that she was anything other than calm. The statement was not made until several hours after she had been returned to her home and was not made to her mother or grandmother, but brought out by interrogation. According to her grandfather, she was normal and playing in the yard at the time the police officer came to investigate the incident. The doctor who examined her stated that she was not visibly upset and was in fact withdrawn.
412 So.2d at 460. It should be noted, however, that in Lyles the court recognized that the statements were not spontaneous, but were in response to questioning.
The state claims that under the circumstances of this case, the statements were made sufficiently close in time to the incidents to justify a liberal extension of the excited utterance exception. See State v. Messamore, 2 Haw. App. 643, 639 P.2d 413 (1982); People v. Taylor, 66 Mich. App. 456, 239 N.W.2d 627 (1976); State ex rel Harris v. Schmidt, 69 Wis.2d 668, 230 N.W.2d 890 (1975).
In finding that the admission of hearsay statements was error, the court in Carver v. State considered significant, in evaluating the applicability of a res gestae exception, the absence of a dazed, excited, hysterical, bruised or disheveled appearance at the time of the utterance. 344 So.2d at 1331. In other cases in which the admission of hearsay evidence was approved, the statements were made while the victim was under the influence of the excitement caused by the event. See Jackson v. State, 419 So.2d at 394; Monarca v. State, 412 So.2d at 443. Also see Purdy v. State, 343 So.2d 4 (Fla.), cert denied, 434 U.S. 847, 98 S.Ct. 153, 54 L.Ed.2d 114 (1977). But cf. McRae v. State, 383 So.2d 289 (Fla. 2d DCA 1980) (where several hours elapsed before sexual battery victim told others about incident, and then eight days passed before victim revealed another such incident, statements not admissible as part of the res gestae); Brown v. State, 344 So.2d 641 (Fla. 2d DCA 1977) (child's statements of sexual battery made three days after incident not res gestae declaration).
In Jackson, the defendant took the child out to a car. Upon returning to her house, the child immediately told her mother "that man hurt me" and repeated the accusation an hour later. These remarks were considered excited utterances. The court quoted with approval from Harmon v. Anderson, 495 F. Supp. 341 (E.D.Mich. 1980):
The reliability of the excited utterance, which is a long-established exception to the hearsay rule, rests upon the circumstances under which the declaration is made. Generally, three essential elements are necessary. First, there must be an event startling enough to cause nervous excitement. Second, the statement must have been made before there had been time to *619 contrive or misrepresent. And, third, the statement must be made while the person is under the stress of excitement caused by the event. McCormick points out that the rationale for the exception lies in the special reliability which is regarded as furnished by the excitement superseding the declarant's powers of reflection and fabrication. McCormick on Evidence (2nd Edition), West Publishing Co. (1972) 297, p. 704.
Id. at 344.
419 So.2d at 396. In Monarca, the statements were made only hours after the incident. We also note that in Purdy, although the excited utterance exception was not discussed, the statement was made immediately following the incident.
We recognize that there is no bright line standard by which to measure the length of a permissible time gap for the number of hours or days that excitement can be said to continue from the stress of a crime. However, it is clear that the intent of the code, which we are obliged to enforce, is that the state prove that the time was sufficiently short under the facts to fall within the limits of the exception. Courts should be liberal in their evaluation under the compelling circumstances of child abuse. See Graham, Indicia of Reliability and Face to Face Confrontation: Emerging Issues in Child Sexual Abuse Prosecutions, 40 U.Miami L.Rev. 19 (1985). However, in this case we would exceed that limit in stretching the concepts of time and excitement to the extent requested by the state.
The trial in this case was conducted prior to the enactment of section 90.803(23), Florida Statutes, effective July 1st, 1985. This new hearsay exception now provides a specific procedure to be followed with respect to the statements of child victims of sexual abuse.
It may be true that the child's statements in this case were in fact reliable: she loved her father; she had no known motive to lie; there was corroboration of abuse; and the statements were spontaneous and apparently not contrived. But reliability is not the issue of law before this court. The Florida legislature had the opportunity to include a general safety valve exception to the hearsay rule, one where evidence is deemed reliable but is not otherwise admissible  see Rule 803(24), Federal Rules of Evidence.  but chose not to include such a provision in the Florida code.[2]
We need not address the fact that there was no finding by the trial judge regarding the competency of the child as a witness. But we do note that in Glendening v. State, 503 So.2d 335, 340 (Fla. 2d DCA 1987), it was determined that a finding of incompetency to testify does not render hearsay statements unreliable for admission under section 90.803(23), Florida Statutes. But see Adams v. State, 34 Fla. 185, 15 So. 905 (1894) (where 3 1/2 year old child found incompetent to testify as witness, child's statements inadmissible as res gestae declarations).
Generally, a trial court's rulings on the admissibility of evidence will not be disturbed on review in the absence of an abuse of discretion and injury to substantial rights of the appellant. Ashley v. State, 370 So.2d 1191 (Fla. 3d DCA 1979); § 924.33, Fla. Stat. (1985). However, we cannot ignore the fact that the defense did not dispute that the child was abused but, rather, claimed that the defendant was innocent. Therefore, we must consider that but for the erroneous rulings, the posture of the case before the jury would have been different. See Drake v. State, 441 So.2d 1079 (Fla. 1983), cert. denied, 466 U.S. 978, 104 S.Ct. 2361, 80 L.Ed.2d 832 (1984); Palmes v. State, 397 So.2d 648 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981).
With respect to the other issue on appeal, we find no error. We therefore reverse and remand for a new trial. We certify the *620 following question to the supreme court as one of great public importance:
Whether out-of-court statements of a child are admissible under section 90.803(1) or (2), Florida Statutes, where they refer to a series of prior events which the testimony does not establish as having occurred simultaneously with or immediately preceding the hearsay statement of the victim.
WALDEN, J., concurs.
GLICKSTEIN, J., concurs specially.
GLICKSTEIN, Judge, concurring specially.
I write for these reasons:
1. The availability or unavailability of the child to testify, versus the constitutional right of a defendant to confront his or her accuser became of serious concern to the court in this case. On July 2, 1986, we issued an order which addressed the responsibility of the prosecution to demonstrate the unavailability of the victim.
Still not satisfied that the supplemental briefs fully informed us on all significant aspects of the case, we requested, on December 24, 1986, second supplemental briefs, albeit we recognized that the questions being pondered were in a time frame preceding the effective date of section 90.803(23), Florida Statutes (1985), which is therefore not applicable. That section makes clear how reliability of a child victim's out-of-court statement is to be determined, and what may constitute a child victim's unavailability to testify at trial.
Having concluded that there has been reversible error because proof is lacking of when the sexual abuse took place, the majority has exercised the option of omitting to discuss the issue of availability or competence of the child victim as a witness. I suggest that not to determine the unavailability of the child in the pre-statute time frame of the instant case constituted fundamental error. See Davis v. Alaska, 415 U.S. 308, 319, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1973). Such determination was made in Jackson v. State, 419 So.2d 394 (Fla. 4th DCA 1982).
United States v. Inadi, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986), involved the question of whether the confrontation clause requires the prosecution to demonstrate the unavailability on an unindicted coconspirator prior to using his statements made in furtherance of a conspiracy. It is clear from the decision that the Supreme Court intended the unavailability requirement to be applied on a case-by-case basis. In Inadi the court found that a finding of unavailability was unnecessary because unlike prior testimony the statements involved had independent significance derived from the circumstances under which they were made, were not likely to add anything to the truth determining process, and placed a heavy burden on the prosecution.
While an excited utterance of a child may have independent significance derived from the circumstances under which it was made, I am not confident in assuming that applying the unavailability rule to the present case would not likely add anything to the truth determining process. The child's hearsay statements were undoubtedly the major factor in obtaining a conviction in the present case. I believe that an opportunity to cross-examine her if she is found to be competent, could only add to the truth-determining process. Further, unlike Inadi, the burden of the prosecution in determining whether the child is available (in this case it would likely be dependent on whether the child was found to be competent) is relatively small. Unlike the typical declarant described in Inadi, the hearsay declarant in the present case is not a fugitive nor is incarcerated, and there is no indication that there was or would be any difficulty in locating her. It is not at all clear whether or not a finding of competency was made in Purdy v. State, 343 So.2d 4 (Fla. 1977). The language of that case seems to imply that the child was incompetent and thus unavailable. If that was the case, then Purdy is certainly consistent with my view in the present case.
The bottom line is that I believe that in the present case, where the testimony in question was obviously the principal factor *621 contributing to appellant's conviction and the burden involved in determining the availability of the witness is small, the confrontation clause mandates that the prosecution determine whether the victim is available. Accord Sluka v. State, 717 P.2d 394, 401 (Alaska App. 1986). This belief is supported by the requirement in the recently enacted section 90.803(23), Florida Statutes (1985) which requires that the child testify or be found to be unavailable.
2. We are compelled to reverse also because the state failed to establish a predicate for admitting the witness babysitter's version of what the small child told her. The sword of justice cuts evenly for both parties. In Jackson v. State, 419 So.2d 394 (Fla. 4th DCA 1982), this writer explained why out-of-court statements of the child victim to others were admissible in that case. Here, such statements were inadmissible because the critical evidentiary threshold had not been crossed. Whether they are spontaneous statements or excited utterances, the statements must be made, as expressly defined in section 90.803(1) and (2), Florida Statutes (1979), in close temporal proximity to the subject event. The statute is of no help to the court in the instant case, however, notwithstanding the presence of indicia of spontaneity and reliability of this child's statements to the first person who saw her once the father was away.
3. Section 90.803(23), Florida Statutes (1985) reflects the legislature's recognition that abused children may for years not be emotionally or physically able to be forthcoming about sexual abuse by one or more family members, let alone mere hours, days or weeks after the incidents.
In Perpetrators and Their Acts: Data from 365 Adults Molested as Children, 11 Child Abuse and Neglect, The International Journal 237 (1987), Kathleen A. Kendall-Tackett and Arthur F. Simon recite, inter alia:
(a) 99% of the perpetrators were known to their victims, 39% being the victims' biological fathers and 20% their stepfathers.
(b) Only 17.8% of the victims ever reported their molestation to law enforcement.
(c) The median elapsed time between the end of the molestation and the first seeking of treatment on account of the childhood sexual abuse was sixteen years.
(d) Being a victim of molestation, even if merely of fondling, was clearly a detrimental experience.
NOTES
[1] Although there may be some ambiguity with respect to the date in her testimony, the witness clearly says, "I think it was the next day" [April 15th].
[2] For an illustration of another context in which the Florida courts have had to exclude otherwise reliable hearsay in order to comply with the evidence code, see Tisdale v. State, 498 So.2d 1280 (Fla. 4th DCA 1986); Delgado-Santos v. State, 471 So.2d 74 (Fla. 3d DCA 1985), approved 497 So.2d 1199 (Fla. 1986).