323 So.2d 297 (1975)
Bernard BALLARD and Archie Curtis, Appellants,
v.
The STATE of Florida, Appellee.
Nos. 75-25, 75-261.
District Court of Appeal of Florida, Third District.
December 9, 1975.
*298 Phillip A. Hubbart, Public Defender, and Gerald D. Hubbart, Asst. Public Defender, for appellants.
Robert L. Shevin, Atty. Gen., and J. Robert Olian, Asst. Atty. Gen., and Steven D. Ginsburg, Legal Intern, for appellee.
Before PEARSON, HAVERFIELD and NATHAN, JJ.
PER CURIAM.
This is the consolidation of an appeal by Bernard Ballard and an appeal by Archie Curtis, co-defendants in a joint jury trial, from a judgment of conviction and sentence *299 pursuant to a verdict, providing two concurrent 40-year sentences, in the state penitentiary, for second degree murder and robbery for Ballard, and two concurrent life sentences, in the state penitentiary, for first degree murder and robbery for Curtis.
The facts of the case are relatively undisputed. On July 29, 1974, Curtis, holding a .22 caliber pistol, and Ballard, holding a .38 caliber pistol, approached two men who were sitting in a car, and demanded all of their money. One of the men, Jackson, gave his cash to Ballard. The other claimed he had no money and Curtis shot him in the head, killing him. Both Curtis and Ballard ran away. That evening, Jackson accompanied Miami Police Department officers to a residence where they located Ballard and Curtis. Jackson identified both men. Detective Walter Martinez, who was present at the time, found a .38 caliber revolver and several rounds of .22 caliber and .38 caliber ammunition, under a bed on which Ballard was lying. Ballard's fingerprints were on the .38 caliber revolver. Detective Martinez testified, over Ballard's objection, that he advised Ballard of his constitutional rights to remain silent and to have a lawyer. When the detective testified that Ballard elected to remain silent, Ballard's counsel moved for a mistrial which was denied. Ballard's counsel contended that Martinez did not properly advise Ballard of his constitutional rights, but the trial court made a determination that his constitutional rights had been protected. Martinez then testified that when he asked about the gun found under the bed, Ballard said it did not belong to him and he never saw it before.
Detective Bryant, of the Miami Police Department, testified that on the following morning, he obtained a .22 caliber pistol from one Robert Wright. The testimony of the medical examiner and a ballistics expert showed that an autopsy revealed that the bullet removed from the deceased victim's head was fired from the gun recovered by Detective Bryant. The State rested its case and both defendants moved for directed verdicts which were denied.
Robert Wright, listed as a State's witness, but not called by the State to testify, was called to testify on Ballard's behalf. Curtis objected and moved for severance and mistrial. The court deferred ruling until after hearing the testimony. Wright testified that on July 29, 1974, he gave Ballard the .22 caliber pistol in question and drove Ballard and Curtis to the area where the shooting occurred. He further testified that Curtis and Ballard left the car for about 15 minutes and when they returned, Curtis said, "... damn, I shot that boy." Wright also testified that Curtis later returned the gun to him; that he did not see Ballard take part in the robbery and that Ballard told him Curtis "had shot that boy." The motions for severance and mistrial were denied. Neither of the defendants testified. In summation, the prosecution stated that he did not vouch for Wright's credibility, but he referred to Wright's motive for testifying as a "street sense of justice." Following a jury verdict, Curtis was adjudged guilty and sentenced to two concurrent life sentences in the state penitentiary for first degree murder and robbery, and Ballard was adjudged guilty and sentenced to two concurrent 40-year terms in the state penitentiary for second degree murder and robbery.
In this consolidated appeal, Curtis contends that the court erred in denying his motions for severance and mistrial made before and after the testimony of Robert Wright, thus effectively denying Curtis the constitutional right to confront and cross-examine witnesses (namely the co-defendant), and the right to a fair trial when the defendants' defenses became mutually antagonistic. Ballard contends that the trial court erred in failing to find that Ballard's statements to Detective Martinez were voluntarily made and in permitting Martinez to testify over Ballard's objection as the record does not show that Ballard was adequately *300 advised of his constitutional rights under the Fifth, Sixth and Fourteenth Amendments to the Constitution.
Curtis' argument, essentially, is that Wright's testimony contained an accusatory statement by co-defendant Ballard against Curtis, and since Ballard did not testify, Curtis was deprived of the opportunity to cross-examine Ballard who had become an accuser by virtue of Wright's testimony. The law in Florida as to severance of defendants is set forth in Rule 3.152(b)(1)(ii) as follows:
"(1) On motion of the State or a defendant, the court shall order a severance of defendants and separate trials:
(ii) during trial, only with defendant's consent and upon a showing that such order is necessary to achieve a fair determination of the guilt or innocence of one or more defendants."
The granting or denying of a motion for severance is largely discretionary with the trial judge and his rulings will not ordinarily be disturbed on appeal absent a clear showing of palpable abuse of that discretion. Manson v. State, Fla. 1956, 88 So.2d 272. Likewise, the granting or denial of a motion for mistrial is a matter within the sound discretion of the trial court. Reis v. State, Fla.App. 1971, 248 So.2d 666. On appeal, the burden is on the defendant to clearly demonstrate that the trial judge abused his discretion in denying the severance. Rodriguez v. State, Fla.App. 1970, 237 So.2d 772. In evaluating the exercise of discretion, it has been held that a mistrial should not be granted when the alleged error is not fundamental or prejudicial to the substantial rights of a defendant. Perry v. State, 1941, 146 Fla. 187, 200 So. 525. We find that the facts of the instant case do not show that a severance was necessary to achieve a fair determination of Curtis' guilt or innocence, and the trial judge acted within the bounds of his discretion in denying the motion for severance. Curtis relies on Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, as authority for his position. We note, however that violations of the Bruton rule may constitute harmless error where the evidence of guilt is overwhelming and the effect of admitting the codefendant's admission is comparatively slight. Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340. Prior to Wright's testimony, Jackson, the robbery victim and eye witness, clearly identified Curtis as the man who used a .22 caliber gun to shoot and kill the deceased. It appears that the trial judge was justified in considering that the effect of Wright's testimony on Curtis' guilt was slight and harmless. Curtis has failed to sustain the burden of establishing an abuse of discretion in the denial by the trial court of the motions for mistrial and severance.
Curtis has urged that he was denied a fair trial when the defenses of each defendant became mutually antagonistic. It appears from the record, however, that both defenses cooperated with one another throughout the trial, presented similar theories as to innocence and did not act to prejudice each other. See Roberts v. State, Fla. 1964, 164 So.2d 817, 821; Woodside v. State, Fla.App. 1968, 206 So.2d 426, 429. Ballard's confession to Wright was known to attorneys for both defendants prior to Wright's testimony and prior to the testimony of Detective Bryant to whom Wright spoke and gave the .22 caliber gun. Curtis knew of a possible basis for antagonism, yet failed to make a pretrial motion for severance as required by Rule 3.152, RCrP. Wright's testimony as to Curtis' possession of the murder weapon was no more than cumulative to that previously elicited. For these reasons, we find no abuse of discretion in denying the motion for severance.
Ballard's first argument is that the testimony of Detective Martinez that Ballard denied knowledge of the .38 caliber pistol found under his bed was improperly *301 allowed, absent a finding that Ballard's statements were voluntarily made. Where no fundamental rights have been violated and the evidence of guilt is sufficient, technical errors in ruling on the admission of testimony will not cause a reversal. Mahone v. State, Fla.App. 1969, 222 So.2d 769. A reversal should not be ordered unless the error complained of was prejudicial or harmful to the substantial rights of the accused, and the introduction of improper or inadmissible evidence must be prejudicial in order to warrant a reversal. Cornelius v. State, Fla. 1950, 49 So.2d 332, 335. Under the facts in this case, we do not find Ballard's denial of the weapon, found near him at the time of arrest, to be an indication of guilty knowledge or a confession required to be tested by its voluntariness. Even if it were a confession, this court will not substitute its judgment for that of the trial court as to voluntariness of confessions or admissions after a defendant has been advised of his rights. Barker v. State, Fla.App. 1973, 271 So.2d 790; Phillips v. State, Fla.App. 1973, 284 So.2d 485. Considering the evidence against Ballard, fingerprints on the .38 revolver and eyewitness identification, failure to make a specific finding of voluntariness is, at most, harmless error. We do not agree with Ballard that the rule of McDole v. State, Fla. 1973, 283 So.2d 553, applies, since he has not urged coercion, brutality, or involuntariness. See Wilson v. State, Fla. 1974, 304 So.2d 119.
Ballard's second contention is that he was not adequately advised of his constitutional rights. The record does not specifically indicate whether Ballard was told that anything he said might be used against him. However, Detective Martinez testified that he advised Ballard of his rights at the time of arrest and that the defendant understood his rights and answered voluntarily. From a reading of the record it appears that Ballard's constitutional rights have been protected.
Affirmed.