375 So.2d 840 (1979)
Carol DOWNER, Appellant,
v.
STATE of Florida, Appellee.
Linda CURTIS et al., Appellants,
v.
STATE of Florida, Appellee.
Linda CURTIS, Virginia Cassidy, Carol Downer, and Janice Cohen, Relators,
v.
Sid J. WHITE, Clerk of the Supreme Court of Florida, Respondent.
Nos. 51726, 51727, 57825.
Supreme Court of Florida.
September 20, 1979.
Rehearing Denied October 29, 1979.
*842 Betty Owen Stinson and Diane K. Kiesling of Stinson & Kiesling, Tallahassee, Gordon H. Rubin, Los Angeles, Cal., and Margaret Good, Asst. Public Defender, Tallahassee, for appellants.
Jim Smith, Atty. Gen., and Richard W. Prospect, Asst. Atty. Gen., Tallahassee, for appellee.
Sidney L. Matthew and Jerome M. Novey, Tallahassee, for amicus curiae, American Civil Liberties Union of Florida, Tallahassee Chapter.
Kent Spriggs, Tallahassee, for amicus curiae, NOW Legal Defense and Education Fund.

ON REHEARING GRANTED
SUNDBERG, Justice.
This cause is a direct appeal from an order of the County Court for Leon County, Florida, upholding the constitutionality of section 810.08(1), Florida Statutes (Supp. 1976), under the Florida and Federal Constitutions. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution.
Appellants Carol Downer, Linda Curtis, Virginia Cassidy and Janice Cohen are members of an organization known as Women Acting Together to Combat Harassment (WATCH). At approximately 10:30 p.m. on March 6, 1977, appellants and approximately twenty-six others from the organization arrived at Tallahassee Memorial Hospital (TMH)[1] for the purpose of conducting a "consumer inspection" of the hospital's maternity facilities. The testimony given at appellants' trial shows that the group was accompanied by Paul Henschel, a cameraman from WFSU-TV who filmed portions of the "inspection." Appellants entered through the front door, which was unlocked. Visiting hours at the hospital were over for the day. As the group proceeded through the lobby and toward the ground floor elevators they were observed by several TMH employees, but none of these persons informed appellants that visiting hours had ended or otherwise tried to stop them. Appellants did, however, pass a sign in the lobby which read "VISITING HOURS ARE OVER. IMMEDIATE FAMILY CHECK AT DESK." Although this sign is generally placed in the center of the main lobby facing the front entrance at 8:30 p.m., the conclusion of visiting hours, it is unclear whether it was in this position on the night in issue. There was testimony that a cleaning person moved the sign from the center of the main lobby entrance to a side hall just off the main hallway. However, there was a sign on the wall between the ground floor elevators which reflected that visiting hours ended at 8:30 p.m., and a similar sign was in the passenger elevator. Part of the WATCH group proceeded to the fourth floor maternity section by the passenger elevator; others used the stairway. Upon reaching the fourth floor the women divided into two groups, one to "inspect" the nursery and one to "inspect" the labor and delivery area. A sign on the door to the postpartum area, which led both to the nursery and to labor and delivery, reflected that visiting hours were over. A telephone was on the wall near the postpartum doorway, and a sign instructed persons to call the nurses' station before entering. Ignoring the signs, appellants opened the door leading to the postpartum area and proceeded down the hallway to a room designated "Nursery # 2." Appellants Downer and Cassidy entered the nursery through a door marked "NO ADMITTANCE," purportedly to determine what cleaning solution was used on the babies, whether the infants had scalp infections from the fetal heart monitor, and how tightly they were gowned. Appellants Curtis and Cohen apparently remained in the hallway inside the *843 postpartum area. There was no allegation that Ms. Downer or Ms. Cassidy touched or otherwise harmed the babies. When asked to leave the nursery by a nurse, the two women complied. A hospital security guard detained a woman at the postpartum nurses' station. When asked to identify herself, the woman wrote "Janice Cohen Femme" on a piece of paper and handed it to the guard. Upon request, appellants and the others exited the postpartum area. The police were not summoned at that time and appellants left the hospital. The WATCH group thereafter reported the results of the "inspection" to the media and to TMH. Two days later, on March 8, 1977, appellants were charged with willfully entering "a structure or conveyance ... without being authorized, licensed, or invited," in violation of section 810.08(1), Florida Statutes (Supp. 1976), Florida's trespass statute. Appellants filed motions to dismiss the informations, alleging essentially that section 810.08(1) is unconstitutionally vague and overbroad. It was also asserted that the enactment was unconstitutionally applied to appellants. The motions were denied, and appellants were tried and found guilty of trespass. Downer and Cassidy were sentenced to sixty days in the county jail and fined $1,000 each. Cohen and Curtis were given thirty-day sentences and fined $500.
Appellants have raised a plethora of issues on appeal, but only the following warrant extended discussion: (1) that section 810.08(1), Florida Statutes (Supp. 1976), is unconstitutionally vague and overbroad; (2) that the trial judge improperly excluded evidence which purportedly would have shown that appellants' prosecution constituted a selective enforcement of section 810.08(1); (3) that the trial judge should have granted appellants' motion for judgment of acquittal; (4) that the trial court erred in denying Cohen's motion for severance; and (5) that the admission into evidence of a photograph of Cohen and extrajudicial identifications based upon the photograph constituted reversible error. For the following reasons we find these and the remaining issues raised by appellants to be without merit and, accordingly, we affirm their convictions and sentences.
The initial issue for our consideration is the allegation that section 810.08(1), Florida Statutes (Supp. 1976), is vague and overbroad. The challenged enactment provides:
Trespass in structure or conveyance. 
(1) Whoever, without being authorized, licensed, or invited, willfully enters or remains in any structure or conveyance or, having been authorized, licensed, or invited is warned to depart and refuses to do so, commits the offense of trespass in a structure or conveyance.
Appellants' allegation of vagueness is based in part upon the fact that the words "authorized, licensed, or invited" are not expressly defined by section 810.08(1).[2] We conclude that the challenged terms are of such common understanding and usage that persons of ordinary intelligence are fully able to determine what conduct is proscribed by the challenged enactment. See Rose v. Locke, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975); United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954); Tatzel v. State, 356 So.2d 787 (1978); Bellamy v. State, 347 So.2d 419 (Fla. 1977). The dictionary definition of the term "authorize" is "to endorse, empower, justify or permit." A "license" is permission to enter. Finally, to "invite" is "to request [one's] presence." Webster's Third New International Dictionary (1961). The challenged terms reveal clearly that one who enters a structure absent an invitation or permission to do so is in violation of section 810.08(1), Florida Statutes (Supp. 1976).
Appellants argue that TMH is a public facility and that members of the public are impliedly invited to enter the building. We agree that by virtue of its *844 operation as a public health facility, TMH has extended an implicit invitation to members of the public to enter its doors. However, as the United States Supreme Court acknowledged in Adderley v. Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966), this public access may be expressly limited to the extent necessary for the orderly functioning of the public facility. In Adderley a group was protesting in opposition to an arrest in front of a county jail. Because the group was blocking the entrance and driveway of the jail, the sheriff ordered the demonstrators to leave or be arrested. Those who refused to comply were charged with trespass. In upholding the defendants' convictions, the Court stated:
[We must determine] only the question of whether conviction ... unconstitutionally deprives petitioners of their rights to freedom of speech, press, assembly or petition. We hold it does not. The sheriff, as jail custodian, had power, as the state courts have here held, to direct that this large crowd of people get off the grounds. There is not a shred of evidence in this record that this power was exercised ... because the sheriff objected to what was being sung or said by the demonstrators or because he disagreed with the objectives of their protest. The record reveals that he objected only to their presence on that part of the jail grounds reserved for jail uses. There is no evidence at all that on any other occasion had similarly large groups of the public been permitted to gather on this portion of the jail grounds for any purpose. Nothing in the Constitution of the United States prevents Florida from even-handed enforcement of its general trespass statute against those refusing to obey the sheriff's order to remove themselves from what amounted to the curtilage of the jailhouse. The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated. For this reason there is no merit to the petitioners' argument that they had a constitutional right to stay on the property, over the jail custodian's objections, because this "area chosen for the peaceful civil rights demonstration was not only `reasonable' but also particularly appropriate... ."
385 U.S. at 46-47, 87 S.Ct. at 247 (footnote omitted) (emphasis supplied); accord, Corn v. State, 332 So.2d 4, 6 (Fla. 1976). TMH is a public medical facility, the primary purpose of which is to protect and promote the lives and health of its patients. Appellants are charged with trespass due to their entry into the postpartum area, which contains the nursery for newborn infants and the labor and delivery rooms. The hospital is clearly entitled to reasonably restrict the access of the general public to this area in order to prevent noisy disturbances and the possible spread of germs to mothers in active labor and to their newly born children. Appellants do not assail the reasonableness of these restrictions in the postpartum area of TMH. Rather, they assert that they were entitled to ignore these prohibitions with impunity because they were exercising certain first amendment rights.[3]
Assuming, without deciding, that first amendment freedoms are involved, appellants' argument that section 810.08(1) impermissibly infringed upon their free exercise must fail nonetheless. The fact that one is exercising first amendment rights while violating otherwise proper restrictions upon their entry to a public facility does not insulate them from prosecution for trespass. In rejecting a similar argument advanced by the demonstrators in Adderley, the United States Supreme Court said:
Such an argument has as its major unarticulated premise the assumption that people who want to propagandize protests or views have a constitutional right *845 to do so whenever and however and wherever they please. That concept of constitutional law was vigorously and forthrightly rejected in two of the cases petitioners rely on, Cox v. Louisiana, supra, [379 U.S. 536,] at 554-555 and 563-564, [85 S.Ct. 453, 13 L.Ed.2d 471.] We reject it again. The United States Constitution does not forbid a State to control the use of its own property for its own lawful nondiscriminatory purpose.
385 U.S. at 47-48, 87 S.Ct. at 247 (footnote omitted). Just as the Adderley Court rejected this proposition, so do we.
In their second point on appeal, appellants seek to distinguish Adderley v. Florida. The Court there noted the absence of evidence that the demonstrators were arrested because the sheriff disagreed with the objectives of their protest. In contrast, appellants here contend that the trespass statute was enforced against them solely because they had been embroiled in controversy with TMH regarding several healthrelated issues. We are not persuaded that section 810.08(1) was selectively enforced against appellants. In support of this argument, appellants unsuccessfully sought to present testimony at trial that others were permitted to ignore the visiting hours signs at TMH and enter patients' rooms at unauthorized times. While this allegation may be true, it does not aid appellants. The crux of the charge against appellants was their disregard for the signs at and their unauthorized entry into the postpartum area; they did not present or attempt to present evidence that unauthorized persons were permitted to enter the postpartum are of TMH with impunity.[4] Furthermore, the possible presence of vindictiveness on the part of TMH officials is immaterial to appellants' allegation of selective enforcement of section 810.08(1). This is so because the state attorney, not personnel at TMH, made the decision to prosecute appellants for trespass. There is no allegation, and we will not imply, that the prosecutor's decision to bring these charges was improperly influenced. Consequently, appellants' attempt to distinguish Adderley v. Florida, as well as their second point on appeal, must fail.
Appellants next contend that the trial judge improperly denied their motion for judgment of acquittal. Because the state did not introduce evidence as to the identity of those who had placed the restrictive signs in the hospital, nor proof of their authorization to do so, it purportedly failed to establish a prima facie case. A related issue is appellants' assertion that the portion of section 810.08(1) under which they were charged is defectively vague  that the enactment fails to specify who possesses the power to extend or limit authorization to enter a structure.
In order to withstand a defendant's motion for judgment of acquittal, the state must introduce as to each element of an offense sufficient evidence to sustain a guilty verdict.[5] We do not believe, however, that the identity and authority of those who have withheld permission to enter certain portions of a public facility are elements of the trespass statute. It is sufficient if the prosecutor establishes that the defendant was on notice that he was not authorized to enter the portion of the public building in which the alleged trespass occurred. Only if the defendant at trial challenges the authorization of one who has posted notice of or who has otherwise communicated this restriction, is the state required to prove the identity of the individual *846 and his authority to restrict access to the portion of the public facility in question.[6] In the case before us, the testimony revealed that appellants passed several signs warning that visiting hours were over and that they should not enter the postpartum area absent specific permission to do so. Despite appellants' testimony that they either did not see the signs or did not read those signs which they did notice, there was sufficient evidence to sustain a jury finding that appellants were on notice of this restriction.
We now turn to appellants' fourth point  that Ms. Cohen's motion for severance should have been granted. Ms. Cohen argues that she was prejudiced by the testimony of appellant Downer that she, Cassidy, Curtis and Cohen were in the postpartum area of TMH. Further, the purported effect of this testimony was to force Cohen to testify in her own behalf and thus incriminate herself. Ms. Cohen testified in great detail concerning her entry into TMH for the purpose of conducting a "consumer inspection" and freely admitted under questioning by her counsel that she was in the postpartum area on the evening in question. We are not persuaded that there is present in this case the antagonism of interests between codefendants which would require their severance. See Ballard v. State, 323 So.2d 297 (Fla. 3d DCA 1975); Frazier v. State, 287 So.2d 386 (Fla. 1st DCA 1973). The defenses of the appellants were consistent; they took the stand and admitted their presence in the restricted portion of the hospital. They sought to justify their presence based upon their motive for entry  to conduct a "consumer inspection" of the facilities and their claimed ignorance of the various warning signs. The record does not reflect that Ms. Cohen took the stand and corroborated and expanded in great detail upon the testimony of Ms. Downer because she felt compelled to do so in light of her codefendant's testimony. Because no abuse of discretion by the trial judge in denying the motion for severance has been demonstrated, we will not disturb his ruling on appeal. See Manson v. State, 88 So.2d 272 (Fla. 1956); Roberson v. State, 40 Fla. 509, 24 So. 474 (1898).
Finally, appellant Cohen contends that the admission into evidence of our-of-court identifications of her from a photograph, as well as admission of the photograph itself, constituted reversible error. A state's witness, Susan Gelson, was one of the nurses who encountered the intruders in the postpartum area. At a photographic "show up" conducted by the public defender prior to trial, Ms. Gelson chose a photograph of appellant Cohen and stated that it looked like one of the group of approximately thirty people that she had seen in the postpartum area. At a pretrial deposition Ms. Gelson described this photograph of Ms. Cohen as "vaguely familiar." At trial, this witness reiterated, essentially, this characterization when again shown the photograph. Citing the decision of this Court in Willis v. State, 217 So.2d 106 (Fla. 1968), appellant Cohen contends that these extrajudicial identifications of her photograph should not have been considered by the jury as substantive or original evidence of her identity, because Ms. Gelson was unable to make an in-court identification as well. Absent this in-court identification, asserts Ms. Cohen, the prior identification and photograph should only have been considered in corroboration of the testimony of Ms. Gelson. Initially, we must point out that in our recent decision in State v. Freber, 366 So.2d 426 (Fla. 1978), we receded from Willis in this regard. In Freber we concluded that the better rule is to permit testimony of an earlier identification, despite its hearsay characteristics, provided *847 that the identifying witness is present at trial and available for cross-examination. Our decision was based upon two important factors: (1) the fact that the witness was able to make an identification shortly after the offense is of obvious probative value; and (2) the availability of this witness for cross-examination concerning this identification avoids the primary danger of hearsay testimony  unreliability. The true thrust of appellant's attack is to the weight, not the admissibility, of the identifications of Ms. Gelson. The fact that Ms. Gelson's identifications were less than conclusive did not render them inadmissible; rather, it was for the jury to determine their relative probative value.[7] Because the criteria of State v. Freber have been satisfied in that Ms. Gelson was available at trial for cross-examination with respect to her out-of-court identifications, the final point before us must fail.
Accordingly, for the foregoing reasons, the order of the County Court for Leon County, Florida, upholding the constitutionality of section 810.08(1), Florida Statutes (Supp. 1976), and the convictions and sentences of appellants are hereby affirmed.
It is so ordered.
ENGLAND, C.J., and OVERTON and ALDERMAN, JJ., concur.
ADKINS and BOYD, JJ., dissent.
NOTES
[1] TMH has been renamed Tallahassee Memorial Regional Medical Center. In this opinion we will refer to the facility as Tallahassee Memorial Hospital (TMH), its name at the time of the offenses in question.
[2] Appellants also contend that the portion of section 810.08(1), which relates to the failure of an authorized entrant to depart after warning, is vague. Because appellants were not charged with violation of that part of the enactment, we need not address this argument.
[3] Appellants contend in part that because the "inspection" was conducted in order to enlighten the public about the health care practices of TMH, they were engaged in constitutionally protected speech, rather than in unprotected conduct. Because appellants intended to publish this information, they assert that the first amendment freedom of the press is implicated as well.
[4] Paul Henschel, a cameraman from WFSU-TV, who accompanied the WATCH group and entered the postpartum hallway with the others, was not prosecuted. Rather, he testified against appellants at trial. We do not deem the state's decision to enlist Mr. Henschel to testify for the prosecution, rather than to charge him as well, as evidence that appellants were improperly singled out for prosecution.
[5] See Pittman v. State, 47 So.2d 691 (Fla. 1950); Weinshenker v. State, 223 So.2d 561 (Fla. 3d DCA 1969), cert. denied, 396 U.S. 973, 90 S.Ct. 462, 24 L.Ed.2d 441; Adams v. State, 102 So.2d 47 (Fla. 1st DCA 1958).
[6] Although TMH is a public hospital under the control of the City of Tallahassee, the City of Tallahassee Code, section 285(1) delegates to the municipal hospital board the power "[t]o manage and operate the ... Hospital for the City of Tallahassee to the end that the same might be operated to the degree of greatest service to the community... ." Appellants do not contest the power of the hospital board, pursuant to this delegated authority, to promulgate restrictions upon public access to TMH in order to promote the health of their patients as well as the efficient functioning of the facility.
[7] Harris v. State, 129 Fla. 733, 177 So. 187 (1937); Martin v. State, 100 Fla. 16, 129 So. 112 (1930); Grech v. State, 243 So.2d 216 (Fla. 3d DCA 1971); accord, United States v. Sullivan, 456 F.2d 1273 (5th Cir.1972). But see Anderson v. State, 92 Fla. 477, 110 So. 250 (1926).