Janice COHEN, Virginia Cassidy and Carol Downer, Petitioners,

v.

Ken KATSARIS, as Sheriff of Leon County, Florida, et al., Respondents.

No. TCA 80–0701.

United States District Court, N. D. Florida, Tallahassee Division.

Jan. 7, 1982.

Edward S. Stafman, Tallahassee, Fla., for petitioners.

A. S. Johnston, Asst. Atty. Gen., Tallahassee, Fla., for respondents.

## ORDER

HIGBY, District Judge.

This cause having come on for consideration upon the Magistrate's Report and Recommendation dated December 18, 1981, and all parties having been furnished copies of the Report and Recommendation and having been afforded an opportunity to file objections pursuant to Title 28, U.S.C., Section 636(b)(1), the Court, having considered the Report and Recommendation and all objections thereto timely filed by the parties, has now determined that the Report and Recommendation should be adopted,

Accordingly, it is

ORDERED:

1. The Magistrate's Report and Recommendation is adopted and incorporated by reference in this order of the Court.

2. The Writ of Habeas Corpus shall be issued and the convictions of the Petitioners be overturned.

## REPORT AND RECOMMENDATION

ROBERT C. DEAN, Magistrate.

The above-styled cause is before this court upon the petitioners' application for a writ of habeas corpus filed pursuant to the provisions of 28 U.S.C. § 2254. The petitioners challenge their conviction for a criminal trespass which allegedly took place at Tallahassee Memorial Hospital (TMH), since renamed Tallahassee Memorial Regional Medical Center, on March 6, 1977. The undisputed facts of the case are these:

At approximately 10:30 p. m. on March 6, 1977, the petitioners and other members of their organization arrived at TMH with the purpose in mind of conducting an inspection of the hospital's maternity facilities. They entered through the front door, which was unlocked. Visiting hours at the hospital were over for the day. As they walked through the lobby toward the ground floor elevators the group was observed by several TMH employees, but none of the employees informed the members of the group that visiting hours had ended or otherwise tried to stop them. There is some question about the location on the night in question of a sign which read: "VISITING HOURS ARE OVER. IMMEDIATE FAMILY CHECK AT DESK." Although this sign was generally placed in the center of the main lobby facing the front entrance at 8:30 p. m., the conclusion of visiting hours, there was testimony at trial that a cleaning person moved the sign from the center of the main lobby entrance to a side hall off the main hallway. There was also a sign on the wall between the ground floor elevators which indicated that visiting hours ended at 8:30 p. m., and a similar sign was in the passenger elevator.

Part of the petitioners' group proceeded to the fourth floor maternity section by the elevator; the others used the stairway. Upon reaching the fourth floor, the group proceeded to the door to the postpartum area, which led both to the nursery and to labor and delivery areas. A sign on this door reflected that visiting hours were over. A telephone was on the wall near the postpartum area, and a sign instructed persons to call the nurses' station before entering. Without calling the nurses' station, the petitioners opened the door leading to the postpartum area and proceeded down the hallway to a room designated: "Nursery # 2." Petitioners Downer and Cassidy entered the nursery through a door marked: "NO ADMISSION," while Petitioner Cohen apparently remained in the hallway outside the nursery. Petitioners Downer and Cassidy conducted a visual inspection of the nursery; there were no allegations that petitioners Downer and Cassidy touched or otherwise harmed the babies in the nursery.[1]

---

1. According to the memorandum submitted in support of the application for the writ, each of the petitioners has extensive training in health care.

When asked to leave the nursery by a nurse, the two women complied. A hospital security guard detained a third woman at the postpartum nurses' station. When asked to identify herself, the woman wrote "Janice Cohen Femme" on a piece of paper. Upon request, the petitioners left the postpartum area. The police were not summoned at that time, and the petitioners left the hospital.

Two days later, on March 8, 1977, the petitioners were charged by information with violating Florida's trespass statute. The information charges the petitioners did "then and there, without being authorized, licensed or invited, willfully enter a structure, to-wit: Tallahassee Memorial Hospital, located at 1300 Miccosukee Road and that another human being was in said structure at the time, contrary to Section 810.08, Florida Statutes."

In answer to a request for a bill of particulars, the State responded: "The exact location within Tallahassee Memorial Hospital where the alleged trespass occurred: New-Born Nursery, 4th Floor and other areas marked for no admittance which defendants entered; Tallahassee Memorial Hospital, corner of Magnolia and Miccosukee, Tallahassee, Leon County, Florida."

The petitioners were prosecuted under Section 810.08(1), Florida Statutes (Supp. 1976), which provides: "Whoever, without being authorized, licensed, or invited, willfully enters or remains in any structure or conveyance or, having been authorized, licensed, or invited is warned to depart and refuses to do so, commits the offense of trespass in a structure or conveyance."[2] The definition of the word "structure" is contained in Section 810.011(1), Florida Statutes (1979), which provides: " 'Structure' means any building of any kind, either temporary or permanent, which has a roof over it, together with the curtilage thereof."

The petitioners filed motions to dismiss the informations, alleging essentially that Section 810.08(1) is unconstitutionally vague and overbroad. It was also asserted that the enactment was unconstitutionally applied to the petitioners. The motions were denied, and the petitioners were tried and found guilty of trespass. Petitioners Downer and Cassidy were sentenced to sixty days in the county jail and fined $1,000 each. Petitioner Cohen was given a thirty-day sentence and fined $500.

The petitioners then took a direct appeal of their convictions to the Florida Supreme Court. There, the court upheld the constitutionality of Section 810.08(1) and affirmed the petitioners' convictions in *Downer v. State*, 375 So.2d 840 (Fla.1979). In the following language, the court addressed the petitioners' assertion that the statute is overly broad and vague:

> Appellants' allegation of vagueness is based in part upon the fact that the words 'authorized, licensed, or invited' are not expressly defined by Section 810.-09(1). We conclude that the challenged terms are of such common usage that persons of ordinary intelligence are fully able to determine what conduct is prohibited by the challenged enactment.... The challenged terms reveal clearly that one who enters a structure absent an invitation or permission to do so is in violation of Section 810.08(1), Florida Statutes (Supp.1976).

375 So.2d at 843 (citations and footnote omitted). In response to the petitioners' allegations that the statute was being unconstitutionally applied to them, the court said:

> Appellants argue that TMH is a public facility and that members of the public are impliedly invited to enter the building. We agree that by virtue of its operation as a public health facility, TMH has extended an implicit invitation to mem-

---

2. That part of the statute prohibiting remaining on the premises after notice to leave is not at issue in this case since the petitioners left the postpartum area immediately after requested to do so; in addition, there were no signs on the fourth floor or within the postpartum area ordering unauthorized people to leave the premises.

bers of the public to enter its doors. However, as the United States Supreme Court acknowledged in *Adderley v. Florida*, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966), this public access may be expressly limited to the extent necessary for the orderly functioning of the public facility. . . . TMH is a public medical facility, the primary purpose of which is to protect and promote the lives and health of its patients. Appellants are charged with trespass due to their entry into the postpartum area, which contains the nursery for new-born infants and the labor and delivery rooms. The hospital is clearly entitled to reasonably restrict the access of the general public to this area in order to prevent noisy disturbances and the possible spread of germs to mothers in active labor and to their newly born children.

375 So.2d at 843–44.

The petitioners subsequently filed with this court the present application for a writ of habeas corpus, in which they assert a number of constitutional grounds for overturning their convictions; among these grounds is their assertion that the trespass statute was retroactively construed by the Florida Supreme Court to make criminal their conduct in violation of the Due Process Clause of the Fourteenth Amendment. For the reasons discussed below, this court agrees with this assertion and recommends that the writ should issue and the convictions be overturned.

■ It is a tenet of our jurisprudence that "criminal statutes which fail to give due notice that an act has been made criminal before it is done are unconstitutional deprivations of due process of law." *Jordan v. DeGeorge*, 341 U.S. 223, 230, 71 S.Ct. 703, 707, 95 L.Ed. 886 (1951) (citations omitted). This principle is usually applied in situations in which the language in a statute is so vague that it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. *See United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954); *Williams v. United States*, 341 U.S. 97, 71

S.Ct. 576, 95 L.Ed. 774 (1951). The Florida trespass statute at issue in the case now before this court does not suffer from this defect.

■ The language in Section 810.08(1) is not vague; in fact, it is remarkably specific. However, the unconstitutional application of a statute which is "plain and unambiguous on its face" is also a violation of due process of law. *United States v. Spector*, 343 U.S. 169, 171, 72 S.Ct. 591, 593, 96 L.Ed. 863 (1952).

The most helpful case exploring an unconstitutional application of a precisely worded statute is *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1963). The defendant in *Bouie* was convicted of violating the South Carolina trespass statute for refusing to leave a drugstore restaurant after being told to do so. The language in the statute prohibited entry on the lands of another after notice prohibiting such entry. The South Carolina Supreme Court, in affirming the convictions, construed the statute to cover not only the act of entry on the premises of another after notice not to enter, but also the act of remaining on the premises after notice to leave. The United States Supreme Court found that by applying such a construction of the statute to affirm the defendants' convictions, the state punished them for conduct that was not criminal at the time they committed it. This violated the due process requirement that a criminal statute give fair warning of the conduct which it prohibits. The Court in *Bouie* recognized the "void for vagueness" doctrine is typically applied to vague and overbroad language in a statute; it also commented that the South Carolina statute was neither vague nor overbroad. Nevertheless, the Court said that applying the South Carolina Supreme Court's broader construction of the statute would

produce a potentially greater deprivation of the right to fair notice in this sort of case, where the claim is that a statute precise on its face has been unforeseeably and retroactively expanded by judicial construction, than in the typical "void for

vagueness" situation. When a statute on its face is vague or overbroad, it at least gives a potential defendant some notice, by virtue of this very characteristic, that a question may arise as to its coverage, and that it may be held to cover his contemplated conduct. When a statute on its face is narrow and precise, however, it lulls the potential defendant into a false sense of security, giving him no reason even to suspect that conduct clearly outside the scope of the statute as written will be retroactively brought within it by an act of judicial construction.

378 U.S. at 352, 84 S.Ct. at 1701. The Court then went on to say:

There can be no doubt that a deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language. As the Court recognized in *Pierce v. United States*, 314 U.S. 306, 311 [62 S.Ct. 237, 239, 86 L.Ed. 226], "judicial enlargement of a criminal act by interpretation is at war with fundamental concept of the common law that crimes must be defined with appropriate definiteness." ... Indeed, an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates like an ex post facto law, such as Art. I, Section 10, of the Constitution forbids ... If a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a state Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction. *Cf. Smith v. Cahoon*, 283 U.S. 553, 565 [51 S.Ct. 582, 586, 75 L.Ed. 1264]. The fundamental principle that "the required issue occurred," Hall, *General Principles of Criminal Law* (2d. Ed. 1960), at 58–59, must apply to bar retroactive criminal prohibitions emanating from courts as well as from legislatures. If a judicial construction of a criminal statute is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct

in issue," it must not be given retroactive effect. *Id.*, at 61.

378 U.S. 352 at 354, 84 S.Ct. at 1702. *See Marks v. United States*, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1976).

In a case dealing with similar issues, the petitioner in *Douglas v. Buder*, 412 U.S. 430, 93 S.Ct. 2199, 37 L.Ed.2d 52 (1973), was placed on probation. One of the conditions of probation was that petitioner would report any "arrest" promptly to his probation officer. His probation was revoked after he failed for eleven days to report a traffic citation. The Court noted that the statutes in question defined arrest as an "actual restraint" or taking into "custody." The state argued that the judge presiding over the revocation had determined that, for purposes of state law, a traffic citation was the equivalent of an arrest. In response to this position, the Court said that neither the judge nor the state supreme court had ruled a traffic citation the equivalent of arrest, and that no prior decisional law was cited to support such a construction. Moreover, the Court said even if the state court had declared state law to be that a traffic citation was the equivalent of an arrest, "we would have to conclude that under the rationale of *Bouie v. City of Columbia*, 378 U.S. 347 [84 S.Ct. 1697, 12 L.Ed.2d 894] (1964), the unforeseeable application of that interpretation in the case before us deprived petitioner of due process." 412 U.S. at 432, 93 S.Ct. at 2200.

■ The rationale of the *Bouie* and *Douglas* cases indicates that the petitioners' conviction in the case at bar runs afoul of due process requirements because a seemingly precise statute was unforeseeably broadened after the fact to prohibit their conduct. The relevant part of the statute under which they were prosecuted says that "[w]hoever, without being authorized, licensed, or invited, willfully enters ... any *structure* ... commits the offense of trespass in a structure." Fla.Stat. § 810.08(1) (Supp.1976) (emphasis added). "Structure" is defined as "any *building* of any kind ... which has a roof over it." Fla.Stat. § 810.-011(1) (1979) (emphasis added).

The petitioners, however, were not found guilty of illegally entering the "structure" of TMH; in fact, the Florida Supreme Court said that "by virtue of its operation of the public health facility, TMH has extended an implicit invitation to members of the public to enter its doors." 375 So.2d at 843–44. Rather, the petitioners were convicted for the unauthorized entry of a particular part of the TMH structure in violation of signs which prohibited such entry. "Appellants are charged with trespass due to their entry into the postpartum area, which contains the nursery for newborn infants and the labor and delivery rooms." 375 So.2d at 844.

This court is persuaded that this unexpected and unforeseeable fine-tuning of the language in the trespass statute at the expense of the petitioners' criminal liability contravenes the principles laid out in the *Bouie* case. The Florida Supreme Court's decision in *Downer v. State* in effect made criminal certain conduct, namely the unauthorized entry into a particular room within a structure contrary to signs prohibiting entry, which conduct was not clearly prohibited by the statute in question prior to the court's interpretation. Under such circumstances, the petitioners had no fair warning that such a construction would be attached to the trespass statute.[3] This is even more apparent when considered in light of the fact that prior cases discussing Florida's past and present criminal trespass statutes make no reference to their applicability to a situation in which a person, having gained legal entry to a structure, is later prosecuted for unauthorized entry into a particular part of that structure. *See, e.g., S. H. B. v. State,* 355 So.2d 1176 (Fla. 1977); *Corn v. State,* 332 So.2d 4 (Fla.1976); *Johnson v. State,* 315 So.2d 169 (Fla.1975); *Holmes v. State,* 272 So.2d 149 (Fla.1973); *R. T. v. State,* 353 So.2d 645 (Fla. 3rd DCA 1977); *Hornsby v. State,* 352 So.2d 954 (Fla. 1st DCA 1976); *Minor v. State,* 329 So.2d 30 (Fla. 2nd DCA 1976); *Evanco v. State,* 318 So.2d 535 (Fla. 1st DCA 1975).

When the lack of such a warning construction of Section 810.08(1) or its forerunners is considered in conjunction with the narrow and precise language in that statute, it is plain that due process forbids the application of a subsequent, unforeseeable interpretation of statutory language to make criminal the conduct engaged in by the petitioners. Of course, now that the Florida Supreme Court has announced that Section 810.08(1) contemplates the prohibition of an unauthorized entry into a particular part of a structure otherwise legally entered, there is no reason that the State cannot so apply the statute in the future. *See P. A. B., Inc. v. Stack,* 440 F.Supp. 937 (S.D.Fla.1977). It is only the application of this interpretation to the petitioners at bar that offends the Due Process Clause of the Fourteenth Amendment.

The court notes that some may think the distinction between unlawfully entering a structure and a particular part of that structure is an unimportant one, but it assumes constitutional proportion in the present case. In *Knutson v. Brewer,* 619 F.2d 747 (8th Cir. 1980), the petitioner challenged his conviction under a kidnapping-for-ransom statute which required both abduction and a demand for money or other things of value as ransom. The state supreme court construed "things of value" to include a demand for sex from the victim. Noting the case was one of first impression on interpretation of that statutory phrase, the Eighth Circuit said, "People should not be branded as criminals or condemned to suffer grievous loss without fair notice that the legislature has in fact forbidden the conduct for which they are being punished." 619 F.2d at 749. The Eighth Circuit also explained that a judicial construction of an existing criminal statute may violate due process "if a law is interpreted in an unexpected fashion, if a statute narrowly and precisely drafted is unexpectedly expanded

---

**3.** The memorandum in support of the application indicates that the petitioners called an attorney prior to their visit to the hospital. He advised them that their anticipated conduct

would not be illegal as long as they left the premises when requested to do so. Given the narrow and precise language of the statute, this was not an unreasonable opinion.

to cover conduct without fair notice." 619 F.2d at 751. Nevertheless, the court in *Knutson* said that construing "thing of value" to include a demand for sex did not deprive the petitioner of due process protections because the phrase "money, property, or thing of value" necessarily implied the nonpecuniary possibilities of "thing of value."

The case now before this court is distinguishable in one important aspect. The Florida trespass statute under which the petitioners were convicted not only forbids unauthorized entry into a structure, it also goes on to define "structure" as any building with a roof on it. The Florida Supreme Court has now construed this language to include entry into a particular part of a building. But relevant case law demonstrates that the application of this construction to the petitioners is a violation of due process.

This court certainly does not condone the petitioners' behavior at TMH and considers such conduct to be irresponsible and offensive. The court would make the observation that the petitioners might have been successfully and fairly prosecuted under Florida's breach of the peace, disorderly conduct or unlawful assembly statutes. *See* Fla.Stat. §§ 877.03 [4], 870.02 [5] (1979).

Nevertheless, the Fourteenth Amendment's requirement of due process prohibits the application of a criminal trespass statute clearly, explicitly and unambiguously written to the petitioners' behavior because that statute failed to provide fair warning that the conduct for which they have now been convicted had been made a crime.

Accordingly, it is

RECOMMENDED:

That the writ of habeas corpus be issued and the convictions of the petitioners be overturned.

---

4. Section 877.03, Florida Statutes, provides:

Whoever commits such acts as are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them, or engages in brawling or fighting, or engages in such conduct as to constitute a breach of the peace or disorderly conduct, shall be guilty of a misdemeanor of the second degree, punishable as provided in § 775.082 or § 775.083.

5. Section 870.02, Florida Statutes, provides:

If three or more persons meet together to commit a breach of the peace, or to do any other unlawful act, each of them shall be guilty of a misdemeanor of the second degree, punishable as provided in § 775.082 or § 775.083.