IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED


M.M., A CHILD,

      Appellant,

v.                                                                    Case No. 5D15-1869

STATE OF FLORIDA,

      Appellee.

_____/

Opinion filed March 4, 2016

Appeal from the Circuit Court
for Orange County,
Daniel P. Dawson, Judge.

Robert Wesley, Public Defender, and
Andrew Jackson Fawbush, Jr., Assistant
Public Defender, Orlando, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Nora Hutchinson Hall,
Assistant Attorney General, Daytona
Beach, for Appellee.


EVANDER, J.

      M.M., a juvenile, appeals an order finding him guilty of trespass on school grounds

in violation of section 810.097(1), Florida Statutes (2014), arguing that the trial court erred

in denying his motion for judgment of dismissal. He contends that the evidence was

insufficient to establish that he unlawfully entered, or remained upon, his middle school campus immediately following his suspension. We disagree and, accordingly, affirm.

Section 810.097 provides, in pertinent part:

> (1) Any person who:
>
> (a) Does not have legitimate business on the campus or any other authorization, license, or invitation to enter or remain upon school property; or
>
> (b) Is a student currently under suspension or expulsion;
>
> and who enters or remains upon the campus or any other facility owned by any such school commits a trespass upon the grounds of a school facility and is guilty of a misdemeanor of the second degree . . . .

The incident in question occurred after M.M. acted out in his middle school class and was escorted to the office of the school's administrative dean. There, M.M.'s misconduct continued as he yelled profanities at the administrative dean, pounded on her desk, and refused to comply with her request to "calm down." The administrative dean advised M.M. that he was suspended and called his mother to pick him up. M.M was then instructed by the administrative dean to go to the indoor waiting room outside of her office. The school resource officer was contacted after M.M. continued to engage in disruptive behavior in the waiting room. Despite instructions from both the dean and the school resource officer that he must remain in the waiting area, M.M. walked outside into an adjacent open-air courtyard (near the back of the school campus), where he was arrested for trespass.

M.M. argues that he cannot be found guilty of unlawfully entering or remaining on school property because he was expressly authorized (actually required) to remain on

campus until his mother arrived. *Cf. E. W. v. State*, 873 So. 2d 485, 487-88 (Fla. 1st DCA 2004) (holding that evidence was insufficient to establish that appellant remained unlawfully on school property because, as a minor, appellant could not leave school without parental consent). In essence, M.M. argues that as long as he was authorized to enter or remain on some part of the school's property, he could not be found to have committed a trespass. We reject this argument.

The Florida Supreme Court has recognized that a property owner who impliedly invites members of the public to enter onto its property can limit public access to certain areas of that property and that a criminal trespass occurs when an individual willfully enters or remains in the restricted area. *Downer v. State*, 375 So. 2d 840 (Fla. 1979). In *Downer*, the defendants entered Tallahassee Memorial Hospital (TMH) for the purpose of conducting a "consumer inspection" of the hospital's maternity facility. *Id.* at 842. Ultimately, they entered the nursery section of the maternity ward, ignoring the sign on the door marked "NO ADMITTANCE." *Id.* When asked to leave the nursery by a hospital employee, the two defendants complied. *Id.* at 843. Notwithstanding their compliance with the directive, the two defendants were charged under Florida's "trespass in structure" statute. That statute provided:

> (1) Whoever, without being authorized, licensed, or invited, willfully enters or remains in any structure . . . or, having been authorized, licensed, or invited is warned to depart and refuses to do so, commits the offense of trespass in a structure . . . .

§ 810.08(1), Fla. Stat. (Supp. 1976).

The court concluded that the defendants' actions constituted a trespass, notwithstanding that the hospital was open to the public:

3

> [Defendants] argue that TMH is a public facility and that members of the public are impliedly invited to enter the building. We agree that by virtue of its operation as a public health facility, TMH has extended an implicit invitation to members of the public to enter its doors. However, . . . this public access may be expressly limited to the extent necessary for the orderly functioning of the public facility.

*Id.* at 843-44 (citation omitted). Significantly, the Florida Supreme Court interpreted section 810.08(1) to support a conviction for trespass of an individual who was authorized, licensed, or invited to enter or remain in certain areas of a structure but, who without authority, license, or invitation had willfully entered into a restricted area in that same structure.

Courts in other jurisdictions have similarly rejected the argument that one cannot be found to have committed a trespass within a structure where the individual was authorized to enter or remain in a portion of the structure. In *In re Johnson*, 457 N.E.2d 832 (Ohio Ct. App. 1982), a student was found to have trespassed in an unoccupied structure where he broke into the locked office of a school employee and removed some personal property. 457 N.E.2d at 833. The applicable statute provided that "[n]o person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense . . . or any felony." *Id.* Johnson argued that the statute applied "only to the structure, not a portion thereof." *Id.* at 833-34. The Ohio court summarily rejected the argument, even though the term "unoccupied structure" was not defined by the legislature, and concluded:

> There is no distinction between trespassing from the outside of a structure and trespassing from within the structure from a permitted area into a locked prohibited area.

*Id.* at 834.

4

In *Milton v. State*, 751 S.W.2d 908 (Tex. Crim. App. 1988), a security officer observed Milton walking into an area of the store that was closed to the public as reflected by a sign marked: "STOP! NO TRESPASSING. Authorized Personnel Only." 751 S.W.2d at 909. Milton admitted that he did not work at the store, that he had seen the sign, and that he did not have permission to go into the prohibited area. *Id.* He was convicted of criminal trespass in violation of Texas Penal Code Annotated section 30.05(a) (West 1988), which provided:

> A person commits an offense if he enters or remains on property or in a building of another without effective consent and he:
>
> (1) had notice that the entry was forbidden; or
>
> (2) received notice to depart but failed to do so.

*Id.* The applicable definition of "building" was "any enclosed structure intended for use as a habitation or for some purpose of trade, manufacture, ornament, or use." Texas Penal Code Ann. § 30.01(2) (West 1974). Milton argued that he did not violate the statute because he did not enter a "building," but merely entered an "area" in that building. *Id.* In upholding Milton's conviction, the Texas appellate court correctly observed that to hold otherwise "would be giving an absurd interpretation to the legislative intent behind the statute:"

> In order for this court to hold that appellant's action did not amount to criminal trespass under § 30.05, we would be giving an absurd interpretation to the legislative intent behind the statute. As appellant's attorney admitted during oral argument, the position which appellant desires this court to take would require the reversal of the conviction of anyone who enters a bank building and walks around behind the teller's windows. We would have to hold blameless any person who walked into a convenience store and began rummaging around behind the counter or any person who

5

> entered the lobby of a public building and took the elevators to other sensitive areas of that building clearly closed to the public. We cannot accept appellant's position. When literal enforcement of a statute would lead to consequences which the legislature could not have intended, courts are bound to presume that such consequences were not intended and adopt a construction which will promote the purpose for which the legislation was passed.

*Id.* at 911.

In the instant case, M.M. was suspended prior to the events leading to his arrest for trespass. As a result, he had no legitimate business on campus. Until his mother's arrival, M.M. was authorized, licensed, or invited to be in the office waiting room; he was not authorized, licensed, or invited to be anywhere else on school grounds. Accordingly, his willful action of disobeying the instruction of both the dean and the school resource officer by entering into other areas of the campus constituted a violation of section 810.097(1).

A sterile literal interpretation of a statute should not be adhered to when it would lead to absurd results. *Maddox v. State*, 923 So. 2d 442, 446 (Fla. 2006). The absurd results that would occur by accepting the statutory interpretation advanced by M.M. are readily apparent. Consider the example of a non-student, non-employee who attends a high school basketball game. Even though the individual has no other legitimate business on the school grounds, he willfully enters into locker rooms, chemistry labs, storage rooms, and the trailer that serves as a temporary residence for a school security officer— notwithstanding signs and/or verbal directives from school personnel that only authorized persons may enter those areas. Under M.M.'s theory, no trespass would have occurred until and unless the individual refused to comply with an instruction from an authorized school official to leave the campus.

6

We conclude that the only reasonable interpretation of section 810.097(1) is that "school property" means any part of the school's property. Accordingly, a person who does not have authorization, license, or invitation to enter or remain upon a restricted area of the school property may be found guilty of violating section 810.097(1). This interpretation is consistent with the clear intent of the Legislature to provide for the orderly functioning of schools and to protect students from individuals who enter or remain on school property or parts thereof without a legitimate reason and is also consistent with the Florida Supreme Court's decision in *Downer*.

AFFIRMED.

EDWARDS, J., concurs.
LAWSON, C.J., dissents with opinion.

Because the plain language of controlling statutes dictates a reversal, I respectfully

dissent.  M.M. was adjudicated delinquent for trespass on school grounds in violation of

section 810.097(1), Florida Statutes (2014).  At the outset, it is worth noting that trespass

was not a crime at common law.  As explained in *Desin v. State*, 414 So. 2d 516, 517-18

(Fla. 1982):

> At common law, a simple trespass upon land or personal
> property was not a crime; rather, it was a private wrong which
> was remedied by a civil action to recover damages. 3 W.
> Burdick, The Law of Crime § 720, at 71 (1946); *see generally*
> 3 W. Blackstone, Commentaries *209-14; W. Prosser,
> Handbook of the Law of Torts §§ 13-14, at 63-79 (4th ed.
> 1971). Although simple trespass was an element in certain
> common-law crimes, such as larceny, the attachment of
> criminal penalties to the act of simple trespass is done
> exclusively by statute. Burdick, *supra*, § 720, at 72. In Florida,
> the legislature has enacted numerous statutes providing
> criminal penalties for the most significant acts of unlawful
> interference with another person's property. Some of these
> statutes expressly designate as "trespass" the prohibited act,
> while others prohibit unlawful interference with property
> without attaching the "trespass" label. Any act of "trespass"
> not made criminal by statute constitutes a private wrong under
> the common law which may be remedied only by an action for
> damages.

(footnotes omitted).

These observations only highlight what is generally true with respect to all crimes,

really, which is that behavior is not a crime unless the statute criminalizing the conduct

says so.  And, it should be beyond well-settled that "courts will not look behind [a] statute's

plain language for legislative intent or resort to rules of statutory construction to ascertain

intent."  *State v. Burris*, 875 So. 2d 408, 409 (Fla. 2004) (citation omitted).  "Instead, the

statute's plain and ordinary meaning must control[.]"  *Id.*  One statute that plainly controls

in this case is section 775.021(1), Florida Statutes (2014), which instructs that when a criminal statute "is susceptible of differing constructions, it shall be construed most favorably to the accused."

It also seems significant to me that in choosing which common law trespasses to criminalize, the Florida legislature seemed appropriately sensitive to the due process concerns that are always present when it is not plainly clear when conduct is punishable as a crime. For example, a person cannot be prosecuted for trespass on posted land unless the landowner meets strict requirements for putting the public on notice that entry on the land is prohibited, as follows:

> "Posted land" is that land upon which:
>
> 1. Signs are placed not more than 500 feet apart along, and at each corner of, the boundaries of the land, upon which signs there appears prominently, in letters of not less than 2 inches in height, the words "no trespassing" and in addition thereto the name of the owner, lessee, or occupant of said land. Said signs shall be placed along the boundary line of posted land in a manner and in such position as to be clearly noticeable from outside the boundary line; or
>
> 2. a. Conspicuous no trespassing notice is painted on trees or posts on the property, provided that the notice is:
>
> (I) Painted in an international orange color and displaying the stenciled words "No Trespassing" in letters no less than 2 inches high and 1 inch wide either vertically or horizontally;
>
> (II) Placed so that the bottom of the painted notice is not less than 3 feet from the ground or more than 5 feet from the ground; and
>
> (III) Placed at locations that are readily visible to any person approaching the property and no more than 500 feet apart on agricultural land.

§ 810.011(5)(a), Fla. Stat. (2014).

Turning to the statute in question here, section 810.097 provides that:

(1) Any person who:

(a) Does not have legitimate business on the campus or any other authorization, license, or invitation to enter or remain upon school property; or

(b) Is a student currently under suspension or expulsion;

and who enters or remains upon the campus or any other facility owned by any such school commits a trespass upon the grounds of a school facility and is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.

Although M.M. had been suspended at the time of his arrest, it appears that neither the fact of his suspension nor subsection (b) (relating to suspended students) have any relevance to this statutory analysis. This is because the State relied upon the verbal command that M.M. stay put—creating an implied removal of authorization to be anywhere on campus other than the office waiting area in which he was told to stay—as the basis for this prosecution. The suspension, of course, prompted the command to stay in the waiting area. But, a similar command could be given to any student or guest on campus at any time. So, under the State's theory, adopted by the majority, a school official can create an unlimited number of ever-changing implied trespass zones by verbally limiting the "authorization, license, or invitation" to an area that a person is allowed to occupy on a school campus at any given time. Aside from the due process concerns inherent in this reading of the statute, the majority's construction should be rejected because the statute plainly treats the campus as a whole.

Applying the plain language of the statute to this case, M.M. did not "enter[] . . . the campus" after being told to stay put. He was already on campus, having entered the

campus that morning with authorization to do so. Nor did M.M. unlawfully "remain[] upon the campus"—to the contrary, he was expressly authorized (actually, required) to remain on campus until a parent arrived. *Cf. E.W. v. State*, 873 So. 2d 485 (Fla. 1st DCA 2004). In effect, the majority is reading the statute as prohibiting the unlawful entry onto a campus, *or any part thereof*, without authorization, license or invitation. The legislature certainly could have written the statute that way. But, it did not.

Even the State, at oral argument, admitted that the statute could be reasonably read as referring to the campus as a whole. If this is true—and it surely is—then we are plainly directed by section 775.021(1) to read the statute "favorably to the accused."

The majority seeks to avoid section 775.021(1) by casting the plain reading of the statute as unreasonable on grounds that it would "lead to absurd results." I disagree, and see nothing absurd about the legislature's choice to limit the type of common law trespasses for which a person can be prosecuted and jailed. In this case, M.M. was certainly guilty of disobedience, which could have been punished with a longer term of suspension. That is no more absurd than turning this particular disobedience into a crime. In fact, it seems absurd to me that a teacher or administrator can at any time create a trespass zone in order to turn simple disobedience into a crime—under the majority's theory—by telling a student to stay in his or her chair, or to sit in a corner, or to stay in a particular line. Similarly, although absurd, I guess that an instruction to a student to go somewhere on campus is now a crime if not obeyed—given the "remaining upon" language of the statute.

With respect to the majority's discussion of non-student visitors, it is worth noting that Florida's trespass statutes can be used to control someone who strays into an

11

unauthorized area. Under section 810.097 (the school campus statute at issue here), if the visitor goes somewhere other than where he or she is authorized to be, their invitation to be on campus can be revoked and they can be told to leave the campus immediately. If the person refuses to obey the command to leave, he or she could then be lawfully arrested for trespass. That certainly seems reasonable. And, it is consistent with other statutes authorizing prosecution for trespass after warning. In addition, under section 810.08, Florida Statutes (2014), it is unlawful to enter any structure without being authorized, licensed or invited. So, to use the majority's example, a parent or other member of the public who comes onto a campus to attend a basketball game could be subject to prosecution for leaving the gym and wandering into other structures, such as "the trailer that serves as a temporary residence for a school security officer." And, with respect to the more sinister-sounding scenarios discussed in the majority opinion, there are other criminal statutes that apply when a person enters a structure with the intent to commit a crime. *See* § 810.02, Fla. Stat. (2014) (defining the crime of burglary).

Finally, while I agree with the majority that *Downer v. State,* 375 So. 2d 840 (Fla. 1979), supports their analysis, this is only because the *Downer* court made the same error when analyzing section 810.08(1), Florida Statutes (Supp. 1976) that the majority has made here—expanding the statute beyond its plain language. Tellingly, the trespass convictions upheld in *Downer* were ultimately vacated by the federal district court, which correctly determined that by reading the word "structure" in section 810.02 to mean structure or any part thereof, the Florida Supreme Court had judicially expanded a statute that was "plain and unambiguous on its face" in a way that reasonable people would have not foreseen. *Cohen v. Katsaris,* 530 F. Supp. 1092, 1095 (N.D. Fla. 1982) (quotation

and citation omitted), As the federal court explained, "[t]he Florida Supreme Court's decision in *Downer v. State* in effect made criminal certain conduct, namely the unauthorized entry into a particular room within a structure contrary to signs prohibiting entry, which conduct was not clearly prohibited by the statute in question prior to the court's interpretation." *Id.* at 1097. The district court thus concluded that "the Fourteenth Amendment's requirement of due process prohibits the application of a criminal trespass statute clearly, explicitly and unambiguously written to the petitioners' behavior because that statute failed to provide fair warning that the conduct for which they have now been convicted had been made a crime." *Id.* at 1098.

While I recognize that we are bound to follow controlling precedent from the Florida Supreme Court, I do not view *Downer* as controlling because: (1) that case construed a different statute; and (2) that case involved signage clearly designating sections of the structure as off limits, which is less troubling than allowing school officials to verbally create ever-changing trespass zones in otherwise public areas by implication. Though *Downer* is technically considered "persuasive authority," I do not find the case to be persuasive at all. Instead, I am persuaded by the plain language of the clearly worded statute under which M.M. was prosecuted. I would apply that language, as written, and reverse. To the extent that I thought the statute should be finessed in light of the policy concerns expressed in the majority opinion, I would address those concerns to the legislature.