LAWSON, C.J.,
dissenting.
Because the plain language of controlling statutes dictates a reversal, I respectfully dissent. M.M. was adjudicated delinquent for trespass on school grounds in violation of section 810.097(1), Florida Statutes (2014). At the outset, it is worth noting that trespass was not a crime at common law. As explained in Desin v. State, 414 So.2d 516, 517-18 (Fla.1982):
At common law, a simple trespass upon land or personal property was not a crime; rather, it was a private wrong which was remedied by a civil action to recover damages. 3 W. Burdick, The Law of Crime § 720, at 71 (1946); see generally 3 W. Blackstone, Commentaries .*209-14; W. Prosser, Handbook of the Law of Torts §§ 13-14, at 63-79 (4th ed.1971). Although simple trespass was an element in certain common-law crimes, such as larceny, the attachment of criminal penalties to, the act of simple trespass is done exclusively by statute. Burdick, supra, § 720, at 72. In Florida, the legislature has enacted numerous statutes providing criminal penalties for the most significant acts of unlawful interference with another person’s property. Some of these statutes expressly designate as “trespass” the prohibited act, while others prohibit unlawful interference with property without attaching the “trespass” label. Any act of “trespass” not made criminal by statute constitutes a private wrong under the common law which may be remedied only by an action for damages.
(footnotes omitted). •
These -observations only highlight what is generally true with respect to all crimes, really, which is that behavior is not:a crime *305 unless the statute criminalizing the conduct says so. And, it should be beyond well-settled that “courts will not look behind [a] statute’s plain language for legislative intent or resort to rules of statutory construction to ascertain intent.” State v. Burris, 875 So.2d 408, 409 (Fla.2004) (citation omitted). “Instead, the statute’s plain and ordinary meaning must control[.]” Id. One statute that plainly controls in this case is section 775.021(1), Florida Statutes (2014), which instructs that when a criminal statute “is susceptible of differing constructions, it shall be' construed most favorably to the accused.”
It also seems significant to me that in choosing which common law trespasses to criminalize, the Florida legislature seemed appropriately sensitive to the due process concerns that are always present when it is not plainly clear when' conduct is punishable as a crime. For example, a person cannot be prosecuted for trespass on posted land unless the landowner meets strict requirements for putting the public on notice that entry on the land is prohibited, as follows:
“Posted land” is that land upon which:
1. Signs are placed not more than 500 feet apart along, and at each corner of, the boundaries of the land, upon which signs there appears prominently, in letters of not less than 2 inches in height, the words “no trespassing” and in addition thereto the name of the owner, lessee, or occupant of said land. Said signs shall be placed along the boundary line ■of posted land in a manner and in such position as to be clearly noticeable from outside the boundary line; or
2. a. Conspicuous no trespassing notice is painted on trees or posts on the property, provided that the notice is: (I)Painted in an international orange color and displaying the stenciled words “No Trespassing” in letters no less than 2 inches high and 1 inch • wide either vertically or horizontally;
(II) Placed so that the bottom of the painted notice is not less than 3 feet from the ground or more than 5 feet from the ground; and
(III) Placed at locations that are readily visible to any person approaching the property and no more than 500 feet apart on agricultural land.
§ 810.011(5)(a), Fla. Stat. (2014).
Turning to the statute in question here, section 810.097 provides that:
(1) Any person who:
(a) Does not have legitimate business on the campus or any other authorization, license, or invitation to enter or remain upon school property; or
(b) Is a student currently under suspension or expulsion;
and who enters or remains upon the campus or any other facility owned by any such school commits a trespass upon the grounds of a school facility and is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.
Although M.M. had been suspended at the time of his arrest, it appears that neither the fact of his suspension nor subsection (b) (relating to suspended students) have any relevance to this statutory analysis. This is because the State relied upon the verbal command that M.M. stay put— creating an implied removal of authorization to be anywhere on campus other than the office waiting area in which he was told to stay — as the basis for this prosecution. The suspension, of course, prompted the command to stay in the waiting area. But, a similar command could be given to any student or guest on campus at any time. So, under the State’s theory, adopted by the majority, a school official can create an unlimited number of ever-changing implied *306 trespass zones by verbally limiting the “authorization, license, or invitation” to an area that a person is allowed to occupy on a school campus at any given time. Aside from the due process concerns inherent in this reading of the statute, the majority’s construction should be rejected because the statute plainly treats the campus as a whole.
Applying the plain language of the statute to this case, M.M., did not “enter[ ] ... the campus” after being told to' stay put. He was already on campus, having entered the campus that morning with authorization to do so. Nor did M.M. unlawfully “remain[ ] upon the campus” — to the contrary, he was expressly authorized (actually, required) to remain on campus until a parent arrived. Cf. E.W. v. State, 873 So.2d 485 (Fla. 1st DCA 2004). In effect, the majority is reading the statute as prohibiting the unlawful entry onto a campus, or any part thereof, without authorization, license or invitation. The legislature certainly could have written the statute that way. But, it did not.
Even the State, at oral argument, admitted that the statute could be reasonably read as referring to the campus as a whole. If this is true — and it surely is— then we are plainly directed by section 775.021(1) to read the statute “favorably to the accused.”
. The majority seeks to avoid section 775.021(1) by casting the plain reading of the statute as unreasonable on grounds that it would “lead to absurd results.” I disagree, and see nothing absurd about the legislature’s choice to limit the type of common law trespasses for which a person can be prosecuted and jailed: In this case, M.M. was certainly guilty of disobedience, which could have been punished with a longer term of suspension. That is no more absurd than turning this particular disobedience into a crime. In fact, it seems absurd to me that a teacher or administrator can at any time create a trespass zone in order to turn simple disobedience into a crime — under the majority’s theory — by telling-a student to stay in his or her chair, or to sit in a corner, or to stay in a particular line. Similarly, although absurd, I guess that an instruction to a student to go somewhere on campus is now a crime if not obeyed — given the “remaining upon” language of the statute.
With respect to the majority’s discussion of non-student visitors, it is worth noting that Florida’s trespass statutes can be used to control someone who strays into an unauthorized area. Under section 810.097 (the school campus statute at issue here), if the visitor goes somewhere other than where he or she is authorized to be, their invitation to be on campus can be revoked and they can be told to leave the campus immediately. If the person refuses, to obey the command to leave, he or she could then be lawfully arrested for. trespass. That certainly seems .reasonable. And, it is consistent with other statutes authorizing prosecution for trespass after warning. In addition, under section 810.08, Florida Statutes (2014), it is unlawful to enter any structure without being authorized, licensed or invited. So, to use the majority’s example, a parent or other member of the public who comes onto a campus to attend a basketball game could be subject to prosecution for leaving the gym and wandering into other structures, such as “the trailer that serves as a temporary residence for a school security officer.” And, with respect to the more sinister-sounding scenarios discussed in the majority opinion, there are, other criminal statutes that apply when, a person enters a structure with the intent to. commit a crime. See § 810.02, Fla. Stat. (2014) (defining the crime of burglary),-
*307 Finally, while I agree with the majority that Downer v. State, 375 So.2d.840 (Fla.1979), supports their analysis, this is only because the Donmer court made the same error when analyzing section 810.08(1), Florida Statutes (Supp.1976) that the majority has made here — expanding the statute beyond its plain language. Tellingly, the trespass convictions upheld in Downer were ultimately vacated by the federal district court, which correctly determined that by reading the word “structure” in section 810.02 to mean structure or any part thereof, the Florida Supreme Court had judicially expanded a statute that was “plain and unambiguous on its face” in a way that reasonable people would have not foreseen. Cohen v. Katsaris, 530 F.Supp. 1092, 1095 (N.D.Fla.1982) (quotation and citation omitted), As the federal court explained, “[tjhe Florida Supreme Court’s decision in Downer v. State in effect made criminal certain conduct, namely the unauthorized entry into a particular room within a structure contrary to signs prohibiting entry, which conduct was not clearly prohibited by the statute in question prior to the court’s interpretation.” Id. at 1097. The district court thus concluded that “the Fourteenth Amendment’s requirement of due process prohibits the application of a criminal trespass statute clearly, explicitly and unambiguously written to the petitioners’ behavior because that statute failed to provide fair warning that the conduct for which they have now been convicted had been made a crime.” Id. at 1098.
While I recognize that we are bound to follow controlling precedent from the Florida Supreme Court,! do not view Downer as controlling because: (1) that case construed a different statute; and (2) that case involved signage clearly designating sections of the structure as off limits, which is less troubling than allowing school officials to verbally create ever-changing trespass zones in otherwise public areas by implication. Though Downer is technically considered “persuasive authority,” I do not find the case to be persuasive at all. Instead, I am persuaded by the plain language of the clearly worded statute under which M.M. was prosecuted. I would apply that language, as written, and reverse. To the extent that I thought the statute should be finessed in light of,the policy concerns expressed in the majority opinion, I would address those concerns to the legislature.